McKEOWN v. SOUTH CAROLINA AND GEORGIA EXTENSION
R. R. CO.

RAILROADS.—NONSUIT is improper where the proof tends to show that
deceased, hard of hearing, walking on a part of the railroad track
which pedestrians were accustomed to use, was struck by a freight
train running without a headlight at night, and left on way by
employees.

*Haltiwanger* v. *R. R.*, 64 S. C., 24, *criticised.*

Before DANTZLER, J., York, February, 1903.   Reversed.

Action by John G. McKeown, administrator of J. W.
McKeown, against South Carolina and Georgia Extension
R. R. Co.   From order of nonsuit, plaintiff appeals.

*Messrs. Wilson & Wilson,* for appellant, cite: *As to de-
ceased being a licensee:* 61 S. C., 560; 64 S. C., 22.   *As to
when nonsuit should be granted:* 16 Ency., 392; 54 S. C.,
505; 65 S. C., 444, 128, 521, 430; 61 S. C., 189; 54 S. C.,
505; 66 S. C., 222, 142.

*Mr. C. P. Sanders,* contra, cites: *As to no evidence here
warranting sending case to jury:* 3 Am. & Eng. R. R. Cas.,
N. S., 777; 64 S. C., 7.   *What duty did defendant owe de-
ceased?* 64 S. C., 7.   *Want of head-light not shown to be
cause of injury:* 23 S. C., 531; 57 S. C., 250; 34 S. C., 292.

April 19, 1904.   The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES.   This action was brought to recover
damages for alleged wrongful death of plaintiff's intestate,
J. W. McKeown, through the negligence and wantonness of
the defendant.   This appeal is from a nonsuit.   The com-
plaint alleged:

"4. That on the night of the 5th day of February, 1901,
about 9.30 o'clock, the said J. W. McKeown was walking
along the side of the track of defendant railroad, between

Yorkville and Sharon, in said county and State, and which, with the knowledge and acquiescence of defendant, has long been used by the public as a traveled way, when one of defendant's freight trains, going towards Sharon, and negligently running without any head-light on its engine, recklessly and negligently ran upon and against the said J. W. McKeown, knocking him down on the side of said track and inflicting severe but not necessarily fatal injuries, and that although the engineer and fireman, running and operating said train for defendant, at the time knew, or had good cause to know, or by proper care and inquiry would have known, that the said J. W. McKeown had been so struck and injured, they recklessly, wantonly and negligently failed to stop said train and take care of him, but continued on their way.

"5. That the said J. W. McKeown was hard of hearing, and so could not hear the approach of said train, but if said engine had been supplied with the proper head-light, the reflection therefrom would have warned him of its approach, so that he could have avoided the same.

"6. That the injury so inflicted upon the said J. W. McKeown would not have resulted in his death, if said train had been stopped and proper care and attention had been given to him; but owing to the recklessness and wanton negligence of the defendant, as aforesaid, the said J. W. McKeown was allowed, in said condition, to lie on the side of said track, in the wet and cold, for hours without any aid or assistance, thereby causing his death."

The motion for nonsuit was based upon the following grounds:

"1. Because there is no evidence tending to show that the place where the deceased was killed was a street, highway crossing or traveled place, but, on the contrary, the evidence shows that the place where the deceased was killed, was on the track of the defendant, at a point other than a street, highway or traveled place, and where neither the public nor the deceased had a legal right to be.

"2. Because there is no evidence tending to show that the deceased was seen, or might have been seen, by the engineer, or those in charge of the engine or train, even if there had been a head-light, or that the employees of the defendant company knew, or might have known, that the deceased was in a place of apparent danger, from which he could not have extricated himself.

"3. Because there is no evidence tending to show that the employees of the company were guilty of any wilfulness, wantonness, or of any such negligence or want of care, as would make the defendant liable for injuring or killing one who was using its tracks at a point where he had no legal right to be.

"4. Because there is no evidence which tends to show any breach of duty by the defendant to the deceased, even assuming him to have been a licensee.

"5. Because there is no evidence that deceased was killed by the defendant.

"6. Because there is no evidence tending to show that the train could have been stopped in time to avoid injuring the deceased, even if it had been equipped with a head-light.

"7. Because there is no evidence tending to show that the want of a head-light was the proximate cause of the injury."

Judge Dantzler in his order of nonsuit sustained the first, second, third, sixth and seventh grounds, but overruled the fourth and fifth. The appellant alleges error in granting nonsuit on the grounds stated, and respondent has given proper notice that the Court would be asked to sustain the nonsuit also upon the grounds overruled.

First, as to whether there was any evidence tending to show that deceased was killed by the defendant. In what we shall say hereafter, we do not mean to express any opinion whatever, as to the force or sufficiency of the evidence, but intend only to indicate our view as to whether there was any evidence tending to prove the allegations of the complaint, and which the jury should have been permitted to consider.

There was testimony that on the night of February 5th,
1901, between 10 and 11 o'clock, J. W. McKeown was found
lying in a helpless condition on defendant's track, between
Yorkville and Sharon, in York County, by Willian Currence, ·
who lived close by, and had for some time heard his cries
before going to his assistance. This was after defendant's
freight train had passed going from Yorkville towards
Sharon, the interval not being definitely stated, but spoken
of by the witness as "a good bit." The train left Yorkville
that night and went towards Sharon without a head-light,
and deceased, who was partially deaf, was probably going in
the same direction, as he was last previously seen in York-
ville late that evening, and lived beyond Sharon. No one
who testified saw the train strike deceased. After he was
found on the track, there was much delay in securing suffi-
cient help to remove him, but he was finally removed a short
distance away, where he died about 1 o'clock that night.
The physician who examined his body found a bad bruise
on the right side about twelve inches broad, with congested
blood under the skin, as if struck by a violent blow, and the
physician stated that, in his opinion, the wound was such as
could have been made by some portion of a train of cars pro-
jecting over the track and striking him. There was some
evidence of impressions on the soil near by where he was
found, indicating that he had staggered off from the track,
was down upon his knees, and had dragged himself back to
the place where he was found. This was sufficiency to jus-
tify overruling the nonsuit on the fifth ground.

In sustaining the nonsuit, the Court gave as its reason,
that the evidence showed that the deceased, at the time of his
alleged killing or injury, was a trespasser upon the track of
the defendant company, and did not tend to show any wan-
tonness, wilfulness or intentional disregard of the rights of
the deceased by the defendant, which rendered the defendant
liable for such killing or injury. Assuming now that de-
fendant's train struck deceased, the next inquiry should be
whether there was any evidence tending to show that de-

fendant thereby breached any duty which it owed the deceased.   If deceased was a trespasser, defendant owed him the duty to do him no wanton injury; if he was a licensee, the defendant owed him the duty to exercise ordinary care not to injure him.   But whether the deceased was a trespasser or a licensee, and whether the conduct of defendant was wanton or merely negligent, are questions of fact for the jury, if there is any testimony tending to establish the issue presented in that regard.   It is only when the testimony is incapable of any inference in support of plaintiff's case that a nonsuit is allowable.

The complaint alleged and the testimony tended to show that the path along the side of defendant's track, where plaintiff was struck, had long been used by the public, as a place of travel, with the knowledge and acquiescence of the defendant.   The testimony was to the effect that the path had been constantly used by the public, even more frequently by pedestrians than the public road near by, without the slightest objection by the defendant, and that the neighborhood was thickly settled.   The circumstances were such as might, in the mind of the jury, indicate that the defendant, through its agents, knew of the use made by the public of the pathway, and by not objecting, defendant indicated a willingness that it should be used by the public. ˙ Such evidence would not tend to show that the public had acquired a right of way by alienation or prescription, so as to give the public a legal right to use the pathway against the consent of the defendant, but it does tend to show circumstances which call for the exercise of ordinary care on the part of defendant.

As stated by this Court, in *Jones* v. *Railway Co.*, 61 S. C., 560, 39 S. E., 758: "Even though the use of the track by the public as a walkway was not for such length of time, nor of such character, as to give a legal right to so use the track, and even though the evidence fell short of showing any positive consent of such use by the company, yet if there was evidence tending to show knowledge of and acquiescence in such use without protest, such evidence would tend to show

that the railroad company had much reason to expect the presence of persons upon the track, who were there not as bald trespassers, but using it with the knowledge and acquiescence of the company. Under such circumstances it would be the duty of the railroad company to keep a reasonable lookout, or to give warning of the approach of the train, or generally to observe ordinary care under the circumstances to avoid injury."

The case of *Haltiwanger* v. *R. R. Co.*, 64 S. C., 24, 41 S. E., 810, is not entirely consistent with the rule stated in *Jones* v. *Railway Co.*; but the recent case of *Mathews* v. *Seaboard Air Line Ry.*, 67 S. C., 501, is in accord therewith, and states the rule thus: "While a railroad company cannot lose its right of way by alienation or prescription because of the public interest in its holding it for public purposes, it may impose upon itself as a private corporation duties and obligations to the public or to individuals by inviting the use of the right of way, or indicating its willingness that it should be used by the public or particular individuals. In such circumstances the duty devolves on the railroad company to exercise ordinary care to avoid injury to those so using the right of way."

The Court erred in this case in not submitting to the jury to determine what was deceased's relation to the defendant's right of way, whether as trespasser or licensee, and in declaring that deceased was a trespasser. He further erred in not submitting to the jury the question, whether defendant's conduct was negligent or reckless and wanton. The testimony was not only that defendant's train was being operated at night without a head-light along a track where there was reason to expect pedestrians to be, but that the operatives were conscious that it was negligent to be without a head-light, for at Yorkville they were aware of the failure of the head-light for want of oil, and there was some conversation among the operatives as to who was to blame for the failure to procure oil; and although the train remained quite a while at Yorkville, and oil was readily procurable

there, nevertheless they deliberately started out at night without a head-light. We mean, of course, that the testimony had tendency to show this state of facts. Was this reckless, or wanton, or negligent? The jury ought to have been permitted to say. Wantonness may be inferred from a conscious failure to observe due care. *Watts* v. *R. R. Co.,* 60 S. C., 74, 38 S. E., 240.

Whether the want of a head-light was a proximate cause of the injury, and whether the train could have been stopped in time to avoid injuring the deceased, if there had been a head-light, were questions for the jury under instructions as to the law. There was testimony that a head-light would throw light so as to distinguish a man some 200 or 250 yards. Did the absence of the head-light prevent the engine and fireman from seeing the deceased in time to avoid injuring him? Would the presence of a head-light by its reflections forward on the adjacent objects have enabled deceased, though hard of hearing, to avoid the danger, notwithstanding his back was probably towards the engine? These were matters for the jury in determining, from all the circumstances, whether the absence of the head-light was a breach of any duty owing by defendant to deceased, and whether it was a proximate cause of the injury.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial.