# 7140

## GOODWIN v. ATLANTIC COAST LINE R. R. CO.

1. RAILROADS — CONTRIBUTORY NEGLIGENCE —WILFULNESS — TRESPASSER— LICENSE.—The evidence in this case tending to show that a person having business within and permission to enter the enclosure of a cotton mill where a railroad company has a spur track, was run over by a car being taken out on the spur track, does not conclusively show that he was a bald trespasser but a licensee on the spur track and shows advertent negligence on part of the railroad company, in which case there could be no contributory negligence on his part.

2. CHARGE.—Statement by trial Judge in overruling a motion for non-suit that "the testimony clearly shows that the plaintiff was not a trespasser" is not a charge on the facts under the circumstances here.

3. RAILROADS—SIGNALS—WANTONNESS.—It is the duty of a railroad company at common law to give signals on approaching a point on a spur track within the enclosure of another where persons are accustomed to pass with permission of the owner of the enclosure and knowledge of the company, and the failure to give signals at a public crossing on its main line near the point of accident on the spur track is competent to show wanton or reckless disregard of duty in running the train.

4. AN EXCEPTION alleging error in instructing jury that request of both sides are good law except where modified on ground that there was irreconcilable differences between the requests is too general, because it does not point out what particular proposition or modification or want of modification was objectionable.

5. CHARGE.—Requests may be modified by general charge and does not tend to mislead jury to so modify them and to charge them so modified.

6. RAILROAD—NEGLIGENCE—TRESPASSER—LICENSEE.—One rightfully in the enclosure of a cotton mill where a railroad company at times operates a spur track, standing on the track talking to another at a point where persons have the permission of the mill company to cross the track, is not a trespasser, but a licensee, and the railroad company owes him ordinary care. .

7. CHARGE—RAILROADS—SIGNALS.—The modification of the requests as to duty of railroad company to give signals on approaching a crossing by the general charge, correctly states the law on this point as contended for by appellant.

8. RAILROADS—NEGLIGENCE—LICENSEE.—A railroad company in operating a train on a spur track within the enclosure of another is a licensee and one rightfully on the premises on the track has as much right to

presume that the railroad company will exercise ordinary care in operating there as the company has to presume that persons on the track will get out of the way.

Before WATTS, J., Marlboro, June, 1908.    Affirmed.

Action by R. C. Goodwin against Atlantic Coast Line R. R. Co. and W. A. Frye.    From judgment for plaintiff, defendant appeals.

*Messrs. Willcox & Willcox, Livingston & Muller* and *Townsend & Rogers, for appellant.* No argument furnished Reporter.

*Messrs. Newton & Owens,* contra, cite: *Duty to trespasser:* 61 S. C., 559; 70 S. C., 182.   *Signals for crossings near accident:* 52 S. C., 325; 58 S. C., 70; 8 Ency., 412; 10 Rich., 277; 57 S. C., 205; 56 S. C., 218.   *Duty to licensee:* 57 S. C., 243; 70 S. C., 192.

April 9, 1909.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The plaintiff recovered judgment against the defendant railroad company for $787.50, as damages for personal injuries, loss of three fingers of the left hand and accompanying suffering, caused by collision with defendant's engine and car operating within the yard of the Marlboro Cotton Mill, near Bennettsville, S. C., on October 20, 1906.

The main question presented by the exceptions to said judgment is whether there was error in the Court's refusal of the motion for nonsuit and the motion to direct a verdict for defendant.   Appellant contends that the only inference of which the testimony is susceptible is that plaintiff was a trespasser upon defendant's track at the time of the collision, and that the injury was not wan-

tonly inflicted; that if the injury was a result of defendant's negligence, the testimony shows conclusively that plaintiff proximately contributed thereto by standing upon the track in a position of obvious danger.

There was testimony tending to show that plaintiff had for years been engaged in hauling wood and other material for the Morlboro Coton Mill with his own team, and on this occasion had entered at the lower side of the mill yard, which was enclosed, through a gate for wagons on a road leading through the enclosure partly along the wood piled next to the track and across the track at the upper side and extending out at another gate for wagons, and was going to the superintendent's office to procure payment for some service performed for the mill company; that he took the most direct route to the superintendent's office, which led across the spur track, through an opening in the wood piled alongside the spur track within the enclosure, being used by the defendant company for the purpose of carrying in wood and coal for the Mill company, and in hauling out cars containing the products of the mill; that persons employed about the mill and yard were accustomed to cross said track and walk along it,, whenever it suited their convenience, without objection by the railroad company, and with the knowledge and acquiescence of the Mill company, whose orders only excluded children and loafers; that on reaching the track, at the opening in the woodpile alongside. plaintiff was accosted by a man loading his wagon with wood at or near the opening, and stopped on the edge of the track and engaged in conversation with the man, and standing with his side or baok to the direction from which a train might approach; that while in this position neither he nor the person with whom he was conversing heard the approach of the cars nor any signals, and that while he saw Mr. Thrower, the engineer of the Mill company, approaching from nearly the opposite direction, he did not hear his calls of warning on account of the wind blowing in a contrary

direction; that there was no ringing of bell or blowing of whistle, or any other signal of warning given by the defendants of the train's approach and no lookout on the rear of the backing train, and that the train was backing "at a pretty rapid rate;" that plaintiff became aware of the approach of the backing train when it was within a few feet of him, raised his hand against the car, was thrown down, and, while endeavoring to get out of the way, over the wood which had been placed along the track, was thrown back upon the track by the falling wood and his left hand ran over by the wheels of the car, the car being stopped so quickly that only two trucks had passed him.

There was testimony that the enclosure was controlled by the Marlboro Cotton Mill; that it had a gate for the entrance of a train of cars which was closed at night; that the spur was about 320 feet in length from gate to coal shute, at the end where the coal was dumped, and that it was the custom for the Marlboro Cotton Mill to unload the cars of wood and pile the wood on either side of the track. The defendant's train was a freight train, operating between Florence, S. C., and Fayetteville, N. C., passing by the cotton mill one day going and the next day returning, and it was of frequent occurrence for the train to stop at the mill and use the siding in carrying in material or carrying out the products of the mill. On this occasion, about schedule time, the train arrived and plaintiff was aware of its approach on the main line, but he testified that he was not aware that the engine had moved onto the siding, although he was aware that there was a box car on the siding within the enclosure at the platform of the packing room, but whether the car was empty or loaded with mill products for transportation out was a matter as to which there was some conflict in the testimony. On the part of defendant there was testimony that the car was loaded for transportation out; that the engine switched from the main line, entered the enclosure, attached to the loaded car and pushed on slowly at the rate

of three miles per hour up grade towards the coal shute to take out also an empty car there; that the bell was ringing all the while; that the engineer did not expect that any one would be on the track on this occasion, and did not discover the presence of any one on the track until he heard some one holler, and that he immediately put on brakes and stopped the train; the brakeman, however, testified that after coupling with the car at the platform he signed the engineer back to the coal shute for the empty and climbed on top of the car to give signals, and that as he climbed up he saw a man standing on the edge of the railroad with his side towards him, in a position of danger, talking to another man; that he called out to him: "Lookout, we are coming back there after some cars;" that he did not see him any more until he heard him holler; that he then gave stop signal and the train stopped when only two trucks had passed him. It appears that the distance from the point where the brakeman was when he saw plaintiff to the place of collision was about 125 feet.

We are of the opinion that it cannot be said that the testimony conclusively shows that plaintiff was a bald trespasser upon the track of the railroad company, as in *Hale* v. *R. R. Co.*, 34 S. C., 292, 13 S. E., 537, where the party injured was on the sidetrack in the depot yard of the railroad company and within its exclusive control; and as in *Smalley* v. *Ry. Co.*, 57 S. C., 243, 35 S. E., 489, where the injured party was on a trestle on the main line of the railroad company. Here the track was within the private enclosure of the Marlboro Cotton Mill, and subject to its general control, and its use by the railroad company was not exclusive. The plaintiff was on the yard on business with the Mill company, and under circumstances warranting him in supposing he could cross the track, as others were accustomed to do, with the knowledge and acquiescence of the owner and controller of the enclosure.

A possible theory of the case, then, is that plaintiff was crossing the track as a licensee and not as a trespasser, in which event the railroad company was bound to observe ordinary care not to injure him. *Jones* v. *Railroad,* 61 S. C., 559, 39 S. E., 758. The mere fact that plaintiff stopped upon the track for a few moments, under circumstances tending to show constant use of the track by persons having business in the yard, would not of itself be conclusive that plaintiff was a trespasser in being where he was. The testimony tended to show not merely a case of inadvertent negligence, but a case of advertent negligence, a reckless and wanton disregard of plaintiff's safety by running against him in the yard of his employer without any attempt to stop, when it could easily have been done in time, and without any warning after knowledge of plaintiff's dangerous situation. Under this view it is unnecessary to consider whether the testimony shows conclusively that the plaintiff by his own negligence contributed to his injury, as contributory negligence is not a defense in a case of wanton or wilful injury. Hence, there was no error in refusing the motion for nonsuit and to direct a verdict for defendant.

In announcing his ruling upon the motion for nonsuit, Judge Watts said, in the presence of the jury: "The testimony clearly shows that the plaintiff was not a trespasser."

It is contended that this was an expression of an opinion to the jury on a question of fact contrary to art. V, sec. 26, of the Constitution. The statement was responsive to the motion and was not a charge to the jury in respect to matters of fact. Usually what a Judge says in ruling upon admissibility of testimony, motion for nonsuit, and to direct a verdict, is not considered a violation of the provisions of the Constitution. *Glover* v. *Tel. Co.,* 78 S. C., 505, 59 S. E., 526; *State* v. *Arnold,* 80 S. C., 386. There were no exceptional circumstances showing abuse of discretion to the prejudice of appellant, and the Court was

careful to impress upon the jury that they were the exclusive judges of the facts.

The exceptions to the admission of testimony can not be sustained. Plaintiff's action was not for an injury done at a public crossing, and the testimony admitted was not to show that the place of injury was at a public crossing, but that many persons were accustomed to use and cross the track within the enclosure of the Marlboro Mill Company, as a circumstance to show that under the common law it was the duty of the railroad company, operating within the enclosure with knowledge of the circumstances, to exercise ordinary care. As we understand the testimony, there was a wagon road crossing, used by the Mill company and those dealing with it, within the enclosure, but there was no *public crossing* or *traveled place,* in the sense of the statute, within the enclosure, but there was a public crossing near the enclosure outside. In so far, therefore, as the testimony admitted tended to show failure to. ring the bell or blow the whistle within the enclosure, it related to defendant's alleged duty at common law, and in so far as the admitted testimony tended to show a failure to give such signals without the enclosure at a public crossing near, the testimony was competent under the allegations of the complaint charging a wanton and reckless disregard of duty. *Mack* v. *Ry.,* 52 S. C., 325, 20 S. E., 905, 40 L. R. A., 679; *Mason* v. *Southern Ry.,* 58 S. C., 70, 36 S. E., 440, 53 L. R. A., 913.

Counsel for plaintiff and for defendant presented requests to charge, and in response thereto Judge Watts, after reading them to the jury, said: "In a large measure the attorneys on both sides have been careful in their requests to charge, and it is all good law except when I change or modify it, and when I change or modify it I want you to accept the change or modification." It is contended that this was error: (1) Because it left it to the jury to determine which was the correct law applicable to the case; (2) Because there were

irreconciliable differences and contradictions between the requests submitted by the two sides, and there were no modifications in the general charge.

The first specification can not be sustained, because the general charge was full and explicit as to the law applicable to the case.

The second specification can not be sustained because it is so general that it wholly fails to indicate what material differences or contradictions existed between the two sets of requests to charge, and as to what particular proposition or modification, or want of modification, was objectionable. The object of an exception is to specify some particular error in the trial Court, so that neither counsel nor Court need speculate as to the proposition sought to be reviewed. The design of requests to charge is to have the Court instruct the jury as to the law applicable to all the material issues in the case, and if this is correctly done in the general charge the use and office of requests to charge has been fully met. It can not be prejudicial to appellant for the Court to approve its requests, subject to whatever modification may be made in the general charge, unless an erroneous modification has in fact been made; nor can it be prejudicial to appellant for the Court to charge respondent's requests, subject to modifications in the general charge, unless it is shown that the requests without modification or with the modification given in the general charge is erroneous.

Appellant excepts to the following instructions, given at the request of respondent:

1. "If the jury believe from the evidence that the track upon which the plaintiff is alleged to have been injured was frequented by people passing to and fro along said railroad, which fact was well known to defendant or its agents, servants and employees, and it had been so used for a long time, then the plaintiff, in being found upon said track, with no knowledge of the approach

of the train, would be a licensee thereon, and it was the duty of the defendant to observe ordinary care in backing its cars into said yard and upon said track.

2. "If the jury believe from the testimony that the plaintiff at the time of said accident was in the employment of the mill, and being found upon the track, and without knowledge of the approach of the cars, and in the pursuit of lawful business, and it was the custom of the employees of the mill to cross said track and go upon the said track at their pleasure and without warning to keep off it, then the plaintiff had a right to be there and defendant owed him the duty of ordinary care."

It is contended that this charge was erroneous, because: "1st. There is no allegation in the complaint that the place where plaintiff was injured was at a crossing by defendant's track of a street, highway or traveled place; 2d. That the passing to and fro by *certain individuals* gives the prescriptive right to use the alleged way, whereas such right can be obtained only where the *public* have used it; and 3d. That, even assuming that the right to pass along or over said track existed, it did not give the right to stand and remain to talk upon the track, as implied in said requests, and which was the position, the uncontradicted testimony shows, occupied by the plaintiff when he received the injuries complained of."

If the facts hypothetically stated in the charge are accepted as established by the testimony, then we think it was correct to hold that plaintiff was not a bald trespasser, but a licensee to whom the defendant owed the duty of exercising ordinary care not to injure him. This is especially true when considered with respect to the undisputed fact that the track was within the enclosed yard of the Marlboro Mill Company.

Error is assigned in charging the following request by plaintiff:

4. "If the jury believe from the testimony that the agents of the defendant failed to ring the bell or blow the whistle, or give other signals of approach of the train on entering the mill yard and crossing a known road, then the defendant was guilty of negligence or gross negligence, according to the consciousness of said employees as to whether or not they were failing to discharge a known duty."

The specifications of error are: (1) That a failure to ring the bell or blow the whistle on entering the millyard or crossing a known road was declared to be negligence *per se,* whereas such failure is negligence *per se* only when the train approaches the crossing of a street, highway or traveled place; (2) that such failure when consciously done is only a circumstance to show gross negligence; (3) that the charge was not responsive to the complaint.

The request was charged subject to the modifications of the general charge and must be construed with such general charge on the subject, which was as follows:

"Now, the law requires a railroad train, when it comes to a public crossing or traveled place, or street where the highway or traveled place crosses the railroad, or where the public has a right to cross, it requires them when within 500 yards of such street, highway or traveled place, to ring a bell or blow a whistle and keep that up continuously within 500 yards of the crossing and be continued until the engine passes over it, and if any one is injured at a public crossing by the failure of the railroad company, its agents or servants to ring the bell or blow the whistle until the engine has passed over the crossing, the law says that that is negligence *per se,* but that only applies to a traveled place, a public highway or street where it crosses the railroad, or at a place where the public has crossed and recrossed and used for passage notoriously and adversely for a period of twenty years, and if they have used it in that

way for that length of time they have acquired a right to cross there."

This modification of plaintiff's fourth request to charge brought it in harmony with defendant's view of the law as expressed in its requests to charge on that subject, all of which requests of defendant were given to the jury without modification.

It is excepted that the Court erred in charging plaintiff's fifth request as follows: "If the jury believe from the testimony that the defendant's agents failed to give the signal required by statute for public crossings near the accident, then such evidence is competent to support the allegations of reckless negligence."

We do not regard this as a charge on the facts as alleged in the exception but as a statement of the rule of evidence in *Mack* v. *Ry.* and *Mason* v. *Ry., supra.* This is clearly shown by the following from the general charge:

"Where a case is brought and there is any allegation or proof that the party was injured at a crossing, and they allege wantonness or wilfulness on the part of the agents and servants of the company in injuring him, the party injured would have the right to show as a circumstance to go to the jury that they did not ring the bell or blow the whistle within 500 yards of the crossing, and that goes to the jury as a circumstance to be considered by them as to whether there was a wilful disregard of the law or invasion of the right of the party injured."

It is further alleged that the Court erred in charging plaintiff's 13th request as follows: "If the jury believes from the evidence that the track upon which plaintiff is alleged to have been injured is upon the property of the cotton mill and the plaintiff was an employee in and about said mill, then the plaintiff had a right to be on said track and the defendant owed him the duty of ordinary care, and if defendant failed to observe such care then it would be liable in this action."

It is objected that this charge was faulty in declaring that plaintiff under the facts stated "had a right to be on the track," not to pass over or along the same, and that too regardless of any business there. As we are satisfied upon the undisputed facts of this case, that plaintiff was not a bald trespasser upon defendant's track, and that defendant was in duty bound to exercise ordinary care not to injure plaintiff in his situation within the enclosed mill yard of his employer, the Marlboro Mill Company, we are not disposed to be very critical in reference to the language of the charge since no real prejudice could arise therefrom.

The remaining exception complains of error, in that while the Court approved defendant's requests to charge set forth in the exception, subject to such modification as may be given in the general chrage, this method of treating the requests to charge tended to mislead and confuse the jurors and to cast upon them the duty of reconciling inconsistencies and contradictions, and that defendant's requests specified should have been charged unqualifiedly.

This point has been already considered to some extent. It is. fully met by the fact that the general charge fairly covered all the law applicable to the case and sought to be brought to the attention of the Court by the requests. Indeed in some particulars the charge to the jury was too favorable to the defendant, as for example, (1) in leaving it to the jury to determine whether plaintiff was trespasser or licensee at the time of the collision, when he could without error have declared that plaintiff was entitled to the care due to a licensee; (2) in charging as applicable to the case that the railroad has a right to run its cars wherever its tracks go and its employees have the right if they see a man on the track to presume that he will get out of the way of the cars.

The fundamental error in appellant's case is in supposing that the rule in *Smalley* v. *Ry., supra,* as applied to a tres-

passer on the track of the railway company is applicable in this case where the track was in the private yard of another. The doctrine that a railroad company has a right to presume that a mature person, apparently in the use of his faculties and on the railroad track, without license, will get off the track on the approach of the train, rests upon the railroad company's right of exclusive ownership and control, and the trespasser's knowledge that he has no right to use the track.

But the case is different when the railroad company is itself a licensee, operating within the private yard of another having control of the premises. In such case those having a right to be in the yard and accustomed to use the track in their business dealings with the owner of the yard have as much right to presume that the railroad company will exercise ordinary care in operating within the yard as the railroad company has to presume that persons therein will give them a clear track.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.