## 7586

### LAMB v. SOUTHERN RY.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—RAILROADS—BRIDGES—TRESPASSER.—One walking across a bridge built and maintained for railroad purposes alone, near a public bridge, with notice posted forbidding use by the public, is a trespasser. That boards were placed across the ties for the use of employees, that many persons used the bridge of which the company had notice, without objection. do not alter the rule and the contributory negligence of one so injured would defeat his recovery.

   *Jones* v. *Ry.,* 61 S. C., 556; *Matthews* v. *Ry.,* 67 S. C., 501; *McKeown* v. *R. R.,* 68 S. C., 483; *Goodwin* v. *R. R.,* 82 S. C., 321; *Bamberg* v. *Ry.,* 72 S. C., 389, *distinguished from this case.*

2. RAILROADS—BRIDGES.—WANTONNESS may be inferred from evidence tending to show an engine without cars was run across a railroad bridge which people were accustomed to use at a reckless rate of speed about dark without a headlight or signals, that the engineer saw a man on the bridge some distance ahead and slowed down

to let him get off on a water-stand, and then the engine was sent rapidly forward, that engineer said after testifying he had knocked the man off.   .

3. EVIDENCE—OPINION.—A witness may say if it is daylight or dark.
4. IBID.—HEARSAY.—That another had crossed a bridge may be hearsay, but its admission here harmless as there was other competent evidence tending to show many other persons were accustomed to use the bridge.·
5. IBID.—That the witness had never heard of the company objecting to the public using the bridge is negative but competent.
6. CHARGE—PROXIMATE CAUSE.—To say in charge if "defendant's negligence was the cause of his death, then the plaintiff would be entitled to recover," is not harmful where in another part of the charge the jury were instructed, plaintiff could not recover unless negligence of defendant was the *proximate* cause of the death.
7. REHEARING refused.

Before DANTZLER, J., Edgefield, April, 1909.   Affirmed.

Action by T. E. Lamb, administrator of the estate of James J. Chapman, against Southern Railway Company and G. T. Brewer.   From judgment for plaintiff, defendants appeal.

*Mr. N. G. Evans,* for appellants.

*Messrs. J. Wm. Thurmond* and *Sheppard Bros.,* contra.

May 19, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The steel bridge of the Southern Railway Company, crossing the Savannah River from Hamburg, South Carolina, to Augusta, Georgia, was built and is maintained solely for railroad purposes.   About two hundred yards from this bridge there is a bridge maintained for the use of the public.   James J. Chapman, on the 31st of March, 1908, undertook to walk across the railroad bridge and was killed, either by being knocked off the bridge

by one of the defendant's engines, or by falling into the river in the effort to get out of the way of the engine. The plaintiff, as administrator of Chapman's estate, recovered judgment for three thousand dollars against the defendant railroad company, under a complaint alleging that Chapman's death was caused by the joint and concurrent negligence, recklessness and wantonness of the defendant railroad company and its agent in charge of the engine, the defendant, Brewer, in these particulars: "(a) In running the said locomotive engine across the said bridge without a headlight while it was dark; (b) In running the said locomotive engine at a high rate of speed across said bridge when the said engineman knew, or by the exercise of due care could and would have known that he would meet or run over some person walking across said bridge, as it was dark thereon; (c) In failing to stop or lessen the speed of said engine after the said James J. Chapman was seen, to give him an opportunity to escape from his danger; (d) In failing to have a safe place from one end of the bridge to the other, for persons walking across the same, to stop and protect themselves from the passing engine or train; (e) In having the safety aprons too far apart; (f) In that the said G. T. Brewer, the engineman in control of said engine, saw, or by the exercise of ordinary care, could and would have seen the said James J. Chapman, or his bulk in time to stop the said engine before reaching him, but he did not even reduce the speed thereof, which if done, might have given the said James J. Chapman a chance to escape from his place of danger; (g) In that the said engineman in control of said engine, failed to keep a reasonable lookout for persons passing to and fro on said bridge: (h) In striking the said James J. Chapman and hurling him into said river, or in putting him into such imminent danger of life or limb as to cause him to leap or back into said river, as a safer way to escape from his dangerous position."

The main question made by the appeal is whether a non-suit should have been granted on the grounds: (1) That there was an entire absence of evidence tending to show that the death of Chapman was due to the actionable negligence, or the recklessness or wantonness of the defendants or either of them, and (2) That the evidence admitted of no other inference than that the plaintiff was guilty of contributory negligence.

The case is one of difficulty, because the evidence shows beyond a doubt that a main proximate cause of Chapman's death was his taking the great and perfectly obvious peril of walking over a railroad bridge when the safe public bridge over the river was within easy access. There are differences in favor of the defendant on this point between this case and *Jones* v. *C. & W. C. Ry.,* 61 S. C., 556; 39 S. E., 758; *Matthews* v. *Seaboard Air Line Ry.,* 67 S. C., 501; 46 S. E., 336, 65 L. R. A., 286; *McKeown* v. *S. C. & G. R. R.,* 68 S. C., 483, 47 S. E., 713; *Goodwin* v. *A. C. L. R. R.,* 82 S. C., 321; *Bamberg* v. *A. C. L. Ry. Co.,* 72 S. C., 389, 51 S. E., 988. These cases decided that it could not be laid down as an inevitable inference that a person walking on the railroad right of way was always a trespasser, but that it might be inferred that he was a licensee when the railroad company had acquiesced in the general use by the public of the roadbed as a path or street. But in these cases, when the danger from trains was involved, the public use was of the ordinary roadbed or a very short trestle from which escape was easy without stopping the train or in any way interfering with the railroad business. In the cases cited it was entirely consistent with reason to say that it was not negligence *per se* for a person to walk on the right of way expecting to step off on the approach of a train; and to hold further, that it may be inferred from the general and constant travel on the right of way of large numbers of persons in a populous community that the railroad company had acquiesced in the public

use of its right of way, and that it cannot treat those whom it has reason to expect to find there as trespassers.

But in this case Chapman was killed while walking on a railroad bridge at least a quarter of a mile in length across the Savannah river, which was a part of a long trestle with some fills. The facts relied on to indicate an implied acquiescense by the railroad company in its use by the public were, that many persons actually used the trestle to cross without objection by the railroad authorities, and that one or two planks were laid on the crossties and used as a walk way. But witnesses for the plaintiff testified that at Schultz's Hill, near the beginning of the trestle, there was a sign board posted, plainly forbidding persons to use the trestle, that the passage of trains over the bridge was very frequent, and that the attempt to cross the bridge was dangerous.

Hardly anything could be more stupid than a railroad company's acquiescence in the use of its river bridges by pedestrains. Such stupidity should not be lightly inferred. We do not see how acquiescence so senseless can be inferred from the fact that many persons chose to take the risk of using the trestle when the railroad company had posted a conspicuous notice forbidding them to do so. It cannot be inferred from the fact that planks were placed on the bridge by the company to be used by its own employees, that the railroad company intended others to cross. When a railroad company or other owner of dangerous property warns persons against its use, those who insist in incurring the peril of using it, however numerous they may be, have no right to charge the owner with acquiescence in the use. It is true that Chapman did not enter the trestle where the notice was posted, but climbed up one of the supports to which cross pieces were nailed. But surely, it cannot be contended that the railroad company was bound to put signs all along the trestle in anticipation that persons might climb on it. As was well remarked by the Court in *Burns* v.

*Southern Ry. Co.,* 63 S. C., 46, 40 S. E., 1018, the care required of owners of such property does not extend to the guardianship of those who insist on becoming trespassers and using the property of others unlawfully.

But if it be assumed that Chapman was a licensee and not a trespasser, we think the facts show beyond all doubt that he was guilty of contributory negligence in attempting to walk across the bridge. Everybody knows that walking a long railroad trestle over which trains frequently pass is a very dangerous undertaking, and several witnesses for the plaintiff so testified. The pedestrain who makes the attempt must know that even where there are stands for water barrels on the trestle, they are not intended for his use, and that he runs a risk of reaching them and finding safe refuge. In *Smalley* v. *Southern Ry. Co.,* 57 S. C., 243, 35 S. E., 489, it was held that an engineer who sees a man on a river bridge in the apparent possession of his senses, is not required to stop his train, but may assume that such person has a way of escape. It is true that the way of escape from collision with the train is attended with danger, but when the pedestrian has deliberately taken the chances of being able to use it, he has only himself to blame if he miscalculates and does not find safety at the side of the trestle or under it. Chapman deliberately climbed on the trestle and negligently chose to take this peril, and that too without the excuse of emergency or necessity, for the public bridge only two hundred yards away afforded a convenient and safe crossing. As will be seen by reference to the citations in *Matthews* v. *Seaboard Air Line Ry. Co., supra,* our cases have gone beyond many other courts of high authority in allowing the general use of the right of way by the public in a populous community to be taken as evidence of acquiescence by the railroad company in that use. But we can find no case in this State or elsewhere which holds that a man who undertakes to walk a long trestle over

a river, in spite of a posted notice not to do so, is a licensee or that such an attempt is not negligence *per se.*

We think the evidence shows conclusively that Chapman was a trespasser who took the risk of being injured by meeting a train on the bridge; and that if he had been a licensee, injured by the negligence of the defendants, his contributory negligence would have defeated a recovery.

On the issue as to whether a nonsuit should have been granted, it remains to consider whether there was any evidence that Chapman, as a trespasser, met his death on account of the recklessness or wantonness of the defendant, Brewer, who was in charge of the engine which he was taking across the river; for if the accident was due to the wantonness or recklessness of the defendants, then the contributory negligence of the plaintiff would not prevent his recovery. The witnesses who knew anything of the accident itself were Hall, on behalf of the plaintiff, and Brewer, on behalf of the defendants. Hall, after testifying that Chapman came to his house which was about forty or fifty yards from the point where he climbed on the trestle, between sunset and dark, gave this account of the accident:

"He came to my house coming from Schultz's Hill. I was standing in my back porch; when he came by the house I could see him from the back porch, as my house sits this way with the street (indicating). The house that I lived in there was the only house on the block. He went under the bridge and went up the ladder, and as far as I could see him, he went in the first span of the bridge, when I heard the train coming from the Augusta side of the river. I could tell that it was running fast by the exhaust of the train; when he had got in far enough I could not see him, and the train came very fast until it got within a little piece of the Carolina side of the river. I heard this engine coming, and all at once it reduced its speed, and went on across that way until it came to about even with my house,

[Rep.]                    April Term, 1910.

right at my house, and then the engineer pulled out the throttle and the train went on. The fuss of the engine did not drown the man hollering, 'O Lord, help,' and I could hear the slush, slush of the water as he struggled there, and I ran to his assistance, and when I got within a few steps of the water I heard him holler the last time, and I could not see any one as it was dark."

Hall further testified that there was no headlight on the engine and that the bell was not rung nor the whistle blown. If this were all, any conclusion as to whether Chapman was knocked off by the engine or fell off in his effort to escape would be mainly conjectural.

But the defendant, Brewer, gave this account: "Just as I got about middle ways of the first span from the Augusta side, I saw a man on the bridge; I could see him as plain as any one of you; when I saw this man quicken his pace, as if to make one of these water barrels, which was the first or second barrel on the Carolina side of the river, the Hamburg side; I slowed down the engine there for a few spaces, and I saw this man step from the track into the platform where this water barrel was. I saw him standing there right by the water barrel, on the upper end of it next to the river; I saw him standing there holding on to the barrel this way, with his back up the river. I pulled the engine ahead and passed on over to Hamburg, and the front end of the boiler obstructed my view, because I was on the opposite side of the engine from where this man was standing."

These statements of Hall and Brewer are reconcilable, and if both be taken as true the inference could hardly be avoided that the engineer exercised such care that he was in no wise chargeable with the death of Chapman. But taking Hall's statement alone, it might be inferred either that the engine was "slowed up" in time to allow Chapman to get off the track at the water barrel, and then its speed increased, or that it was "slowed up" after knocking Chap-

man off. On this point the plaintiff offered a witness who testified that he had heard Brewer say after coming off the witness stand that he did knock Chapman off. In addition to this the fact appeared that Brewer was running an engine very easily controlled, because it had no cars attached. This evidence furnished some foundation for the jury to find that the engineman saw Chapman in abundant time to stop his engine or so reduce its speed as to allow Chapman to get to a water barrel stand, and that he nevertheless went on and knocked Chapman off; that there was no necessity for the engineer to run on in the face of Chapman's peril since he was running a mere shifting engine and not a train of cars; that the engine was run over the bridge at high speed without lights and without signals. Such facts if found by the jury would support an inference of indifference and wanton disregard of the safety of trespassers, especially when the defendant had notice that many persons were trespassing on the bridge notwithstanding the notice not to do so. We think it was possible to infer wantonness from the evidence, and, therefore, the nonsuit was properly refused.

The objections to the testimony cannot be sustained. A witness certainly may testify as to whether it is daylight or dark, and the witness did nothing more in the testimony which is objected to. It may be that the witness, Brigham, was testifying from hearsay when he said his son had crossed the bridge, but his testimony was of no consequence after the introduction of undisputed evidence that a great number of persons had crossed. Objection was made to the witness, Blackstone, testifying that he had never heard of the railroad making any objection to persons crossing the bridge. This testimony was negative, but it was relevant. No objection was interposed to the further statement of the witness that he supposed he would have known of it, if there had been objection.

In the twelfth exception error is assigned in charging, "And if you further find that the said James J. Chapman was guilty of negligence, and his negligence was not a proximate cause of death, but the defendant's negligence was the cause of his death, then the plaintiff would be entitled to recover in this action." The omission to say that in order for the plaintiff to recover it was necessary for the jury to conclude that the defendant's negligence was the proximate cause of Chapman's death was not material, because instruction to that effect had been already given.

The other exceptions to the charge were not relied on in the argument and require no detailed discussion.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

May 19, 1910.   Per Curiam.   Careful examination of the petition for rehearing does not convince us that there was any material issue arising on the record overlooked or disregarded in the judgment of the Court.

It is, therefore, ordered that the petition be dismissed, and that the order staying the remittitur be revoked.