14231

PRYOR v. ATLANTA-CHARLOTTE AIRLINE RY. CO. *ET AL.*

(184 S. E., 137)

424

*Messrs. Leppard & Leppard* and *W. E. Bowen,* for appellant,

*Messrs. Blythe & Bonham* and *Frank G. Tompkins*, for respondents,

February 14, 1936.

The opinion of the Court was delivered by MR. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

An order of nonsuit was granted, at the conclusion of plaintiff's testimony, on motion of the defendants by the presiding Judge on Circuit. The appeal is taken from the judgment entered thereon. The plaintiff's intestate was killed by a fast northbound passenger train on the main line track in the yard of the defendants within the limits of the Town of West Greenville, at a point between the underpass in West Greenville and an overhead bridge near Poinsett Mill. Many trains pass this point daily. The place where the tragedy occurred is situated within a very populous area of the industrial community, where the people, including women and children, constantly walk along a pathway, on their way to work in the numerous nearby cotton mills, known as Woodside, Poinsett, Monaghan, and Brandon Mills. On the east side of the yard is located West Greenville and some houses are close to the track on that side. Along the east side of the northbound main line, which is the track on the extreme east, is a well-defined path. A number of other paths lead into this one, but there are no road crossings or paths leading across the tracks at this point.

The deceased was walking in company with three others, two abreast, next to the track and within two or three inches of the end of the cross-ties, along this path or walkway when she was struck from the rear by the pilot beam of the engine of train No. 40. This passenger train is one of the Southern Railway Company's fast trains running from New Orleans to Washington, making a fast schedule and was running between 50 and 60 miles per hour. When the deceased was struck, she was walking by the side of her sister, Lillie Pryor, and had her hand on her sister's shoulder. Those two were walking abreast along the path by the side of the railroad for a distance of 127 feet. Helen Pryor, the deceased, was next to the track. Immediately in front of them were Flonnie Lanford and Frances Sizemore. The testimony shows that a freight train on another track was meeting this group of four and that the engine and three or four box cars had passed them at the time Helen Pryor was struck. The appellant maintains that when people walk two and two that one walks up next to the end of the cross-ties upon the ballast and the other in the path; and that there is plenty of room to walk in this manner; that as a usual thing they could walk probably one upon the edge of the ballast by the end of the ties and the other one down on the dirt; and if it is muddy they walk as a general thing along up by the end of the ties on the ballast to stay out of the mud. The appellants further contend that this path had been used by the public generally for many years and the defendants had interposed no objection to its use by the public. Also, that the defendants had built four board walkways upon the bridge across the river at the Southern depot beyond this point, which had been used by the public without protest. Also, that although signs were placed along the railroad reading, "Warning, do not walk on track or bridges," by implication this was an invitation to use the path; and that the use of the tracks and bridges for at least eighteen years from the underpass south in West Greenville to the Southern depot was permitted under circumstances which would leave no

doubt that the defendants knew of such use and thereby acquiesced in the disregard by the public of the warning signs.

It is further contended by the appellants that by the exercise of even the slightest care on the part of the defendants the death of this young woman would not have occurred; that the engineer could have seen that she was walking within two or three inches of the end of the cross-ties in a position of extreme danger of being struck by the pilot beam of the engine which extended nine inches out over the end of the ties; and that the engineer must have known that she was unaware of the approach from her rear of his train coasting down grade without making any noise and without giving any signals and that the engineer knew that he would hit her if he failed to give her any warning; and that she walked a distance of 127 feet along the path in a little less than thirty seconds; and that her position could be seen by the fireman as he rounded the curve a distance of 1,938 feet away and by the engineer for a distance of 500 or 600 yards. That neither Helen nor any of the others in her party stepped upon the cross-ties; that when they reached the path, they looked in both directions for a train, but none was in sight and the deceased was not guilty of negligence in not looking back oftener than every thirty seconds; and that her position was even more perilous by reason of the freight train pulling up the grade on the southbound main line, blowing its whistle and thereby causing her to be more apt to be unaware of the approach of the passenger train from her rear; and that the engineer on No. 40 was well aware of and could fully appreciate her danger, but made no effort to stop his train, and failed to blow the whistle or sound a bell until about the time she was struck. Appellants further contend that the deceased was not a trespasser, but was a licensee; that she was walking in the path at the end of the cross-ties and that the gravel was worn down and was walked on by people just as they would on the main path; and that the warning sign in regard to the tracks or bridges does not refer to nor include the ballast beyond the end of

the cross-ties; and that she was walking in the path, which included the worn part of the ballast, and that she was not on the track when struck and killed; and that it was for the jury to say whether plaintiff's intestate was walking in the path or on the track.

The respondents contend that the deceased was a trespasser; and say that the pilot beam runs across the front of the engine and that blood and brains were spattered on the bolts in the pilot beam about the step which would indicate that the deceased was struck by the step on the front of the engine and her head was thrown back against the pilot beam, and would indicate further that she was walking upon the cross-ties, though the eyewitnesses do not place her in this position. They further contend that the warning signs were a distinct and clear order to people walking along the path to stay off the tracks and bridges. They claim that if she had walked in the path she would not have been hit and in walking upon the track in disregard of the signs she was a trespasser and that there can be no question that the track of a railroad is not merely the rails and the cross-ties, but is that portion of a right of way upon which the train runs, namely, the rails, the cross-ties, and the rock ballast which support them; that the ballast support the ties, and the rails and all form the track upon which the train runs; and the only inference to be drawn from the testimony is that her death resulted from her deliberate disregard of warnings and heedlessness of her own safety; and that after she entered upon the right of way she had the choice of walking in a well-beaten path beside the track where people were accustomed to walk and in which path she could have walked in absolute safety, as shown by the fact that her three companions were not injured; and that she chose the dangerous method of walking on the rock ballast at the end of the ties in disregard of the warning signs posted by the defendants; and that she was guilty of not only contributory negligence, but contributory willfulness.

The record shows that the witness R. H. Mathis was

asked on cross-examination in regard to a written statement made by him to W. E. Kitts on the day the accident occurred, reading as follows: "Q. I was on East side of railroad, and about 20 or 25 feet from the track, when Mrs. Pryor was killed by No. 40 this evening. I saw four women walking along side by side when the passenger train was about 200 feet behind them—the one that was killed over on the inside of the track, between the rails, smoking a cigarette, I think, with her hand up on the shoulder of·another woman walking on the end of the ties; and there was another woman walking in the ballast at the end of the ties, and another walking out in little path. Now, that is where you put your signature at the time, Mr. Mathis." The witness denied the statement.

The record further shows that the following colloquy occurred during the trial when one of the jurors inquired: "I would like for his Honor to explain what is termed the track; is the roadbed, the whole roadbed considered as part of the track, or is the rails and ties?" To which Mr. Bonham replied, "That is a question of law and we will try to furnish the Court with some information on that before the time comes to give you the law. I would not like to have that question sprung on me, your Honor."

The order of nonsuit holds that there is no evidence in this case in relation to the crossing statute; but that regardless of whether the plaintiff's intestate is a trespasser or a licensee, that her conduct "in walking close beside a railroad track, which our decisions have stated time and time again to be in itself a danger signal, without once looking behind her, although the law imposes on her the duty of using her senses of sight and hearing constitutes negligence so gross as to bar any recovery for her injury. And inasmuch as my views on this case are as I have expressed them above the motion for nonsuit is, therefore, granted."

The issues raised by the exceptions relate to the order of nonsuit which will first be considered, and also to the ad-

missibility of certain testimony which will be considered lastly.

1. The appellant first contends by the exceptions that there was evidence of willfulness of the defendants which should have been submitted to the jury. The foregoing statement of the facts fails to show any conscious failure on the part of the defendants to observe due care, or that the defendants failed to exercise slight care; there is no evidence of a willful or deliberate injury nor of such gross negligence as would be equivalent to willfulness or wantonness; nor was there evidence that the act complained of was committed in such a manner that a person of ordinary prudence would say that it was a reckless disregard of another's rights. In fact, the evidence negatives any and all inference of willfulness on the part of the defendants. The defendants' train was admittedly a fast passenger train, running on its regular schedule on a main line track, at a rapid rate of speed not inconsistent with the safety of its passengers and not in violation of any law nor in violation of the rights of the public at large generally or of the deceased in particular in this instance. The fact that she was in plain and open view of the engineer in charge of the approaching train may under the law justify the inference that she was seen by the engineer, but there is nothing in the testimony to show that even if the engineer saw her there was any reason for the engineer to know or realize that she would remain in a dangerous position resulting in her death, and he had a right to assume that she would get out of harm's way. She was an adult woman, apparently in possession of all of her physical and mental faculties. There is no evidence in the case of any helplessness on her part, and there is no evidence from which it might be inferred that the place was one where persons were to be expected to be walking upon the track or attempting to cross the track. There was nothing from which the jury might infer that no lookout was kept and that it was a reckless disregard of the lives of those who might be on the track. The duty of the locomotive engineer and the fireman

to keep a vigilant lookout ahead for the sake of passengers as well as those who may be helpless on the track is urgent and the failure to keep a lookout may be evidence of recklessness or wantonness under such circumstances, but there is no evidence to that effect in this case. The plaintiff's intestate was walking too near the track for her own safety at a time when the train was reasonably due to pass and it was in the daytime when there was nothing to obscure the vision of the deceased. The evidence warrants also a rejection of any inference of willfulness and there was no question for the jury in regard to the willfulness of the defendants, so that no recovery could be had in this suit for willfulness, and the exceptions in regard to this issue cannot be sustained.

2. The second issue raised by the exceptions is that the nonsuit should not have been granted because the evidence showed that the plaintiff's intestate was a licensee on the property of the defendants, which evidence should have been submitted to the jury; and that under the allegations in the complaint of negligence on the part of the defendants the nonsuit was improper.

Under the well-established law of this State in an appeal from an order of nonsuit the evidence and all inferences from it must be considered most favorably for the plaintiff and must be interpreted most strongly against the defendants. *Horne, Administratrix, v. Atlantic Coast Line R. Co.,* 177 S. C., 461, 181 S. E., 642.

There is a dispute in this case in regard to the place where she was walking at the time of her injury and death. Whether she was walking in the path or upon the track is in dispute under the testimony; and whether the beaten part of the ballast, caused by the alleged walking thereon, constitute a part of the path, or a part of the track is a question of fact under all the circumstances in the case and is not solely a question of law. It is for the jury to say whether she was walking in the path as a license and not as a trespasser. The alleged negligence of the defendants is also an issue for the jury under the testimony in this case. The

case of *Sanders v. Southern Railway,* 90 S. C., 331, 73 S. E., 356, 358, is somewhat similar to the present case and holds that the testimony made out a *prima facie* case for plaintiff.

This Court in the *Sanders case* clearly laid down the following propositions of law: (1) "From it the jury might reasonably have inferred that the use of its right of way by the public was known to and acquiesced in by defendant, and, therefore, that plaintiff was a licensee and entitled to ordinary care on the part of defendant to prevent injury to him; and, also, from the frequency of the use by the general public, that defendant should have anticipated the presence of persons on or near its tracks at that place, and should have exercised due care to prevent injury to them." (2) "Ordinarily the question whether the company knew of and acquiesced in such use of its right of way, whether it be in the switchyard or elsewhere on the right of way, is one of fact to be determined by the jury. In the *Matthews Case* [67 S. C., 499, 46 S. E., 335, 65 L. R. A., 286], the Court said: 'It is, of course, always a question for the jury to determine whether the way was so plain and so constantly used, with the acquiescence and consent of the owner, as to imply an invitation to the public to enter.' Of course, the testimony tending to support the allegation of knowledge and acquiescence on the part of the company may be susceptible of only one inference, and, in that event, the Court should declare what that inference is. But, as in other cases, where more than one inference can be reasonably drawn from the testimony, the jury must be allowed to say what inference should be drawn." (3) "We think his Honor erred also in holding that plaintiff was guilty of negligence in walking too close to the track when there was room enough for him to walk at a safe distance from it. The testimony was that he was walking in a well-defined path. From this, the jury might have inferred that the path had been used by many people before, and that in walking where many others had gone before, plaintiff was exercising ordinary care. In

*Lamb's Case* [86 S. C., 106, 67 S. E., 958, 138 Am. St. Rep., 1030], the Court said: 'In the cases cited (that is, the *Jones Case* [61 S. C., 556, 39 S. E., 758], and those following it), it was entirely consistent with reason to say that it was not negligence *per se* for a person to walk on the right of way expecting to step off on the approach of a train.' See, also, *Matthews v. Seaboard Air Line Ry., supra,* and *Sentell v. Southern Ry.,* 70 S. C., 183, 49 S. E., 215."

It cannot be said as a matter of law that the deceased was either negligent or willful, but it must be left to the jury to decide the question of fact as to whether she was guilty of contributory negligence should the jury conclude that the defendants were negligent. The appellants contend that the deceased was walking along a part of the path for not quite thirty seconds before she was struck. This is a narrow margin of time between life and death—between time and eternity—and is to be considered by the jury together with all other facts and circumstances bearing on the question or issue as to the degree of care exercised by the defendants and by the deceased in this short interval of time when her back was turned to the oncoming train, in view of those upon the engine. Also it is claimed by the appellants that the noise and presence of the passing freight train diverted her attention and put those on the passenger engine on notice of her peril; and it is for the jury to take into consideration the fact as to the greater degree of care and vigilance called for on the part of the deceased as well as on the part of the engineer by reason of this situation. The deceased was not in an inextricable position as for instance midway of a high trestle; and she could have by one step to one side reached a point of safety, had she known or been warned in time of the train's nearness. All of these circumstances raise an issue for the jury to determine as to any alleged negligence of the parties.

The case of *Sanders v. Southern Ry.-Carolina Division,* is again reported in 97 S. C., 423, 81 S. E., 786. This Court was called upon on the second ap-

peal to pass upon the contention that the effect of posting warning signs by the company forbidding the use of its right of way thereby *ipso facto* rendered those who disobeyed the signs trespassers as a matter of law. In the *Sanders Case,* 97 S. C., 423, 81 S. E., 786, 788, it is distinctly stated that whether the public used a part of defendants' right of way for a walkway between certain streets in the City of Charleston was done with the knowledge and acquiescence of railroad company and whether such persons were therefore licensees; or whether they did so against the objection of the railroad company and in spite of its notices forbidding such use and were therefore trespassers, was one of the issues of fact which was hotly contested at the trial in the Court below. This Court held that this was an issue for the jury, saying that whether that plaintiff's intestate was there as a licensee was stoutly denied by defendant; and by proper instructions to the jury, "the issue would have been narrowed to the question whether he was a licensee or trespasser; and, in that event, if the jury had found that the notices had been posted and kept posted, and that intestate went upon the right of way in defiance of them, he was a trespasser, and entitled only to immunity from reckless or wanton injury. In *Lamb v. Southern Ry.,* 86 S. C., 106, 67 S. E., 958, 138 Am. St. Rep., 1030, the Court said: 'When a railroad company or other owner of dangerous property warns persons against its use, those who insist in incurring the peril of using it, however numerous they may be, have no right to charge the owner with acquiescence in the use. * * * As well remarked by the Court in *Burns v. Southern Ry.,* 63 S. C., 46, 40 S. E., 1018, the care required of owners of such property does not extend to the guardianship of those who insist on becoming trespassers and using the property of others unlawfully.' "

Since the defendants are not guilty of willfulness, it follows that no recovery can be had by the plaintiff if the jury finds as a fact that the deceased was a trespasser at the time she was killed.

This is a disputed issue in the case under the testimony, and more than one conclusion can be drawn from the evidence as to the use by the public of the path extending into the ballast, and whether or not the deceased went upon the track or any part of it in defiance of the signs posted and maintained by the defendants in regard to their tracks and bridges. It is definitely settled by the decisions of this State that the jury must decide the disputed issue whether a party is a trespasser where the facts are susceptible of more than one reasonable conclusion in regard thereto.

The foregoing discussion of the issues in this case clearly demonstrates the necessity of referring to the jury the question of fact arising out of the pleadings and the testimony in regard to the alleged negligence of the defendants as set forth in the complaint as a proximate cause of the injury; and in regard to the contention that the deceased was a trespasser and not a licensee; and, further, whether or not the deceased was herself guilty of contributory negligence so as to bar any recovery for her injury. Therefore, the exceptions must be sustained.

4. The appellant also excepts on the ground that it was error to exclude a copy of the rules of the defendant. It appears that plaintiff's attorneys gave notice to defendants' attorneys to produce the rules of defendants by which employees were required to operate trains: On the trial the defendants' attorneys objected on the ground that they did not have the rules in their custody and that the plaintiff had no right to dig into a rule book for what they wanted, as the case was governed by the law and the rules were not relevant to the issue in the case. The defendants' attorneys also stated that they could get a copy of the rules, but objected to furnishing the rules for the government of employees. Thereupon the Court ruled as follows: "Well, now that gives you the right, if you have any rules that apply to the issues in this case you have the right to introduce secondary evidence." Mr. Leppard then took the witness stand and offered a typewritten copy from the

rule book of the Southern Railroad of rules effective November 15, 1899, purporting to be signed by Frank G. Cannon, third vice-president and general manager, and taken from a rule book which had been borrowed from a member of the Greenville bar who objected to the book being brought into the Court. The witness further stated that no effort to subpœna the owner of the book and bring the original book in evidence had been made and that he did not know whether these rules copied from the book are the rules in existence today and that he had not issued a subpœna *duces tecum* to any employee of the Southern Railway to produce a book of the latest rules. The Court then ruled that this copy could not be admitted in evidence under the showing made. In the case of *Gillis v. Atlantic Coast Line R. Co.,* 175 S. C., 223, 179 S. E., 62, several rules were introduced in evidence by the plaintiff, which referred to the duty of the engineer in movement of trains. This Court held that if the engineer failed to obey the signal from the plaintiff and thereby disobeyed the rules of the company as well as the rules of common prudence, this would be negligence on his part, which would be chargeable to the railroad company. In the *Gillis case* the rules were introduced in evidence without objection and no question was raised as to the relevancy of the rules. In the present case there is no allegation in the complaint or specification of negligence to the effect that the defendant violated its rules and no issue arises under the pleadings in this respect. It is also undisputed that the copy of the rules as secondary evidence tendered was not in any way authenticated as a correct copy of the rules now in force. Even if the rule book itself for the year 1899 had been submitted, it would be necessary to go further and offer some testimony tending to show that such rules were still in force at the time of the alleged injury. There certainly was no abuse of discretion on the part of the presiding Judge, but, on the contrary, it is clear that he was correct in his ruling. This exception cannot be sustained. As a new trial must be granted for the reasons stated, it is unnecessary to consider in

further detail the exceptions, but all of the exceptions have been fully disposed of. It is, therefore, ordered that the judgment and order of nonsuit be reversed and that a new trial be, and hereby is, granted.

MR. CHIEF JUSTICE STABLER, MR. JUSTICE CARTER and MR. ACTING ASSOCIATE JUSTICE T. S. SEASE concur.

MR. JUSTICE BONHAM was disqualified.