8088

SANDERS v. SOUTHERN RAILWAY—CAROLINA DIVISION.

1. Appeal—Demurrer.—This Court may consider on a proper record whether a nonsuit might not be sustained on a ground urged but not considered on Circuit.

2. Railroads—Travelled Place—Negligence.—From the evidence in this case the jury might have inferred that the plaintiff in walking on its right of way, in a path where the public had been accustomed to walk for many years, was known to and acquiesced in by defendant, and that he was a licensee and entitled to ordinary care, also from the frequency of the use by the general public that defendant should have anticipated the presence of persons on or near its tracks at that place and should have exercised due care to prevent injury to them.

3. IBID.—IBID.—SWITCH YARD.—Whether a railroad company knew of and acquiesced in the use of its right of way in its switch yard by the general public is an issue of fact to be determined by the jury. *Hale v. R. R., 34 S. C., 292, and Haltiwanger v. R. R., 64 S. C., 7, overruled in part.*

4. IBID.—SPEED—ISSUES.—There being positive evidence of the plaintiff as to the speed of the train, this issue should have been sent to the jury, although the witness' reason for his estimate of the speed may have been faulty.

5. IBID.—TRAVELLED PLACE—ISSUES.—Where a person is walking on a railroad right of way on a well defined path, the Court should not say he was guilty of negligence in walking too near the track.

Before ALDRICH, J., Charleston, April term, 1910. Reversed.

Action by Robert B. Sanders against Southern Railway—Carolina Division. Plaintiff appeals.

*Messrs. Logan & Grace,* for appellant, cite: *When non-suit should not be granted:* 78 S. C. 251; 80 S. C. 545; 67 S. C. 129; 86 S. C. 274; 50 S. C. 37; 86 S. C. 306; 60 S. C. 18. *Plaintiff was a licensee:* 61 S. C. 556; 67 S. C. 501; 68 S. C. 483; 72 S. C. 393; 82 S. C. 326; 86 S. C. 109; 59 S. C. 432. *If plaintiff were a trespasser nonsuit should not have been granted:* 94 S. W. 967; 100 S. W. 246; 94 Fed. 321; 63 S. E. 151; 61 S. W. 58; 64 S. W. 90; 27 S. E. 20; 23 Ency. 745. *Nonsuit should not be sustained on grounds additional to those on which it was granted:* 78 S. C. 127; 53 S. C. 132; 54 S. C. 353; 55 S. C. 450; 64 S. C. 580.

*Mr. Joseph W. Barnwell,* contra, cites: *Trespasser on railroad tracks:* 19 S. C. 20; 23 S. C. 531; 34 S. C. 299; 41 S. C. 1. *Protection to trespessers:* 57 S. C. 243; 64 S. C. 7; 61 S. C. 559. *Use of right of way by public:* 61 S. C. 559; 65 S. C. 410; 67 S. C. 501; 85 S. C. 440; 68 S. C. 483; 70 S. C. 183. *Injury at dangerous places:* 86 S. C. 106. *Care*

*licensee should exercise:* 58 L. R. A. 75.; 29 Cyc. 520.; 65 S. C. 429.

January 17, 1912.   The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This is an appeal from an order of nonsuit in an action to recover damages for personal injuries sustained by plaintiff, as the result of the alleged negligent, reckless and wanton conduct of defendant in operating a train of cars, which struck plaintiff, knocked him down and ran over his leg, crushing it so that it had to be cut off.

At the close of plaintiff's testimony, the defendant moved for a nonsuit upon two grounds: 1. Because there was no evidence of recklessness or wantonness; 2. Because, as to the cause of action for negligence, under the evidence, plaintiff was a trespasser in defendant's switchyard, and defendant owed him no duty, except not to recklessly or wantonly injure him.

The presiding Judge sustained the first ground, but overruled the second, holding that the evidence made an issue whether plaintiff was not a licensee and entitled to ordinary care to prevent injury to him.   But he granted the nonsuit on two grounds: 1. That there was no evidence of negligence, saying that the negligence complained of was in operating the train at a high rate of·speed, and that the only evidence of the speed of the train was that of the plaintiff, who said that he neither saw nor heard the train, and, therefore, he could not testify as to its speed; 2. That plaintiff's injury was caused by his own negligence in walking on or near the track when there was room enough for him to walk at a safe distance from it.   These rulings are made the grounds of exceptions; and the defendant, according to proper practice, gave notice that this Court would be asked to sustain the nonsuit upon the second ground upon which it was moved for on Circuit.

Appellant's contention that respondent is not entitled to have the second ground upon which the motion for nonsuit was based on Circuit considered by this Court, as a sustaining ground is untenable. The cases cited in support of his position hold merely that a nonsuit will not be sustained by this Court on additional grounds *which were not presented to the Circuit Court.* In *Lewis* v. *Hinton,* 64 S. C. 578, 43 S. E. 15, the Court did consider an additional ground to sustain a nonsuit; but in that case, as in this, the ground considered was one which had been presented to the Circuit Court. In *Kennedy* v. *Greenville,* 78 S. C. 127, 58·S. E. 989, the Court does say: "It is well settled that a nonsuit cannot be sustained on grounds additional to those on which it was granted." Standing alone, this statement of the rule is inaccurate, and is susceptible of a meaning which was not intended by the Court, as appears from a consideration of the opinion as a whole, for on the next page, the Court stated the rule, correctly thus: "Hence, we hold that the motion for a nonsuit must stand or fall upon the grounds set forth in the motion."

As the case will have to go back for a new trial, we will not discuss the testimony more than is necessary to sustain our conclusion; and, in what we shall say, we must not be understood as expressing any opinion as to the sufficiency of the evidence to prove the facts in issue, or as to whether the inferences which we suggest *might* have been drawn from the testimony *should* be drawn. What inferences *should* be drawn are exclusively for the jury. But we merely hold that there was *some* testimony tending to support plaintiff's case, and, therefore, that the nonsuit was improper.

Plaintiff's testimony tended to show that he was struck while walking alongside of defendant's track in a well beaten path at a place where the general public had been accustomed to walk for many years, without any objection from defendant; that the train which struck him was run-

ning backwards, at the rate of from twelve to twenty miles an hour, through a populous section of the city of Charleston at a place where men, women and children were constantly passing and repassing along defendant's right of way and upon and near its tracks; that the train ran upon him from behind, without any signal or warning of its approach being given.

We think this testimony made out a *prima facie* case for plaintiff.   From it the jury *might* reasonably have inferred that the use of its right of way by the public was known to and acquiesced in by defendant, and, therefore, that plaintiff was a licensee and entitled to ordinary care on the part of defendant to prevent injury to him; and, also, from the frequency of the use by the general public, that defendant should have anticipated the presence of persons on or near its tracks at that place, and should have exercised due care to prevent injury to them.   *Jones* v. *Ry.,* 61 S. C. 556, 39 S. E. 758; *Matthews* v. *Ry.,* 67 S. C. 499, 46 S. E. 335; *McKeown* v. *R. Co.,* 68 S. C. 483, 47 S. E. 713; *Goodwin* v. *R. Co.,* 82 S. C. 321, 64 S. E. 242; *Bamberg* v. *R. Co.,* 72 S. C. 389, 51 S. E. 988; *Lamb* v. *R. Co.,* 86 S. C. 106, 67 S. E. 958.

In the Jones case, the Court said: "Even though the use of the track by the public as a walkway was not for such length of time nor of such character as to give a legal right to so use the track, and even though the evidence fell short of showing any positive consent to such use by the company, yet if there was evidence tending to show knowledge of and acquiescence in such use without protest, such evidence would tend to show that the railroad company had much reason to expect the presence of persons upon the track, who were there not as bald trespassers, but using it with the knowledge and acquiescence of the company. Under such circumstances it would be the duty of the railroad company to keep a reasonable lookout, or to give warning of the approach of the train, or generally to observe

ordinary care under the circumstances to avoid injury." In the Matthews case, the Court said: "But where a railroad company allows the public to use its right of way for a long time at a particular place in a large town so continuously and frequently that it becomes a well beaten or clearly defined path, plain and open, a reasonable man may well infer that he will not encounter unguarded cuts and other dangers of the ordinary path along the railroad track. In such a case, the owner of the property knows and acquiesces in the use, and by his acquiescence those wishing to go in that direction are lured into a sense of safety in following the course obviously taken by those who have preceded them. If the owners, or those in control of the property, fail to observe ordinary care in avoiding injury to persons who travel the path, relying on the safety suggested by the implied invitation, they must be held responsible." This doctrine was reaffirmed in each of the other cases above cited, and it is the settled law of this State.

But, in its second ground of the motion for nonsuit and in its argument in this Court, defendant seeks to bring this case within the principle upon which the cases of *Hale* v. *R. Co.,* 34 S. C. 292, 13 S. E. 537, and *Haltiwanger* v. *R. Co.,* 64 S. C. 7, 41 S. E. 810, were decided. The facts upon which those two cases were decided were somewhat alike, but not so nearly so that the Hale case cannot be distinguished from the Haltiwanger case, and also from the cases above cited and from this case, but the Haltiwanger case cannot be reconciled with the cases above cited, and, therefore, it and the Hale case, in so far as they are at variance with those cases, are no longer to be considered as authority.

The defendant contends that this case should be distinguished from the Jones case and those following it, on the ground that, in this case, the accident occurred in defendant's switchyard, where there were numerous tracks upon which cars and trains were being constantly switched, and,

therefore, the danger to pedestrians was so great and obvious that it cannot be reasonably inferred that defendant acquiesced in the use of its switchyard by them.   There is some force in this contention, and it is supported by high authority.   The same rule that was announced in the Jones case prevails in the State of Georgia, yet the Courts of that State hold that it is not applicable to cases where the injury occurs in the railroad company's switchyard.   This exception to the rule is based by the Georgia Courts upon the ground that the continuous use of the tracks in a switchyard for switching purposes and the obvious and peculiar dangers to pedestrians there are inconsistent with an inference that the company has impliedly invited or licensed persons to use the yard as a walkway.   *Waldrep* v. *Georgia R. & Banking Co.,* 66 S. E. 1030.

We think, however, that ordinarily the question whether the company knew of and acquiesced in such use of its right of way, whether it be in the switchyard or elsewhere on the right of way, is one of fact to be determined by the jury. In the Matthews case the Court said: "It is, of course, always a question for the jury to determine whether the way was so plain and so constantly used, with the acquiescence and consent of the owner, as to imply an invitation to the public to enter."   Of course, the testimony tending to support the allegation of knowledge and acquiescence on the part of the company may be susceptible of only one inference, and, in that event, the Court should declare what that inference is.   But, as in other cases, where more than one inference *can* be reasonably drawn from the testimony, the jury must be allowed to say what inference *should* be drawn. We held, in the Lamb case, that the obvious danger of attempting to walk across a river on a high railroad bridge, a quarter of a mile long, over which trains were frequently passing when the company had posted a notice forbidding such use of the bridge, was fatal to any reasonable inference

22—90

of acquiescence on the part of the company in such use of its bridge.

In that case, the Court said: "When a railroad company or other owner of dangerous property warns persons against its use, those who insist on incurring the peril of using it, however numerous they may be, have no right to charge the owner with acquiescence in the use." But in this case, there was testimony that, for more than thirty-five years, the defendant's right of way at the place where plaintiff was hurt had been used by plaintiff and the public generally as a footway, without let or hindrance, and that no sign or notice had ever been posted forbidding such use. We think, therefore, that there was no error in overruling the second ground of the motion for nonsuit.

His Honor erred in holding that the high rate of speed was the negligence complained of. The complaint charges negligence in that "said train of cars approached said travveled place or walkway and populous part of the city of Charleston at a high and dangerous rate of speed, and without giving any signal by ringing the bell so that the said plaintiff might have been made aware of the approach of said train of cars, or taking any precautions whatever to avoid injuring said plaintiff, so that said plaintiff was unaware of the approach of said train of cars."

Considering plaintiff's testimony as a whole, we think the issue as to the speed of the train should have gone to the jury. At a previous trial, when he was asked at what speed the train was moving, plaintiff answered: "Judging from the way it hit me, I should judge it was not less than 12 to 15 miles an hour." This was brought out on his cross-examination at this trial, because, in his direct examination at this trial, he testified that the speed of the train was "at least about 12 or 15 *or 20 miles.*" At this trial, however, he gave no reason for his estimate of the speed, except as it may be involved in his answer at the former trial. But he testified that he did not lose consciousness when he was run

over by the train, and he did not say that he did not see or hear the train after it struck him.   His estimate of its speed may have been based upon what he saw and heard of it at the time it struck him and was passing over him, and after it had passed over him.   Sometimes we reach correct conclusions without being able to give satisfactory reasons for them.   Inasmuch as plaintiff testified positively as to the speed of the train, and although he assigned a reason at the former trial for his estimate of the speed which may have been faulty, we are not prepared to say that his testimony on this point is entitled to no weight at all.   It should have been submitted to the jury for what it was worth.

We think his Honor erred also in holding that plaintiff was guilty of negligence in walking too close to the track when there was room enough for him to walk at a safe distance from it.   The testimony was that he was walking in a well defined path.   From this, the jury might have inferred that the path had been used by many people before, and that in walking where many others had gone before, plaintiff was exercising ordinary care.   In Lamb's case, the Court said: "In the cases cited (that is, the Jones case and those following it), it was entirely consistent with reason to say that it was not negligence *per se* for a person to walk on the right of way expecting to step off on the approach of a train."   See, also, *Matthews* v. *Ry., supra,* and *Sentell* v. *Ry.,* 70 S. C. 183, 49 S. E. 215.

Reversed.


*Only* MESSRS. CHIEF JUSTICE GARY *and* JUSTICE HYDRICK *participated in this opinion and they concur.*