14498

SMILEY v. SOUTHERN R. CO. *ET AL.*

(191 S. E., 895)

October, 1935.

*Messrs. F. G. Tompkins, Blythe & Bonham, M. G. Mc-Donald* and *A. C. Todd,* for appellants, cite:

*Messrs. Hugh Beasley, W. H. Nicholson* and *Mayes & Featherstone,* for respondent, cite:

June 14, 1937.

The opinion of the Court was delivered by MR. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

This action was begun on July 6, 1934, tried on Circuit at the October term, 1935, and resulted in a verdict and final judgment thereon in favor of the plaintiff.

This appeal therefrom is duly taken upon the exceptions which appear in the record. The fair and flourishing City of Greenwood centers about the square wherein are located the passenger and freight depots of the defendants, whose right of way with switching area, freight yards, four tracks, main lines and sidings extends northward between Hampton Avenue on the west side and North Main Street on the east side and crosses at the north end the track of the Seaboard Air Line Railway Company, which runs in a cut under an overhead bridge. Oregon Street abuts at right angles into Hamp-

ton Avenue near the south end of this area, and from Oregon Street to the overhead bridge it is 303 feet long by 70 feet or more wide between the inside curb lines. The post office, moving picture theater and stores are located on Hampton Avenue on the side opposite to this area. Stores are also located on one side of North Main Street along this section. It is a busy part of the business part of the city, and includes such activities as pertain to the transportation of passengers and freight by railroad and to the movement of people by foot, motor vehicle, or other means of travel connected with trade, commerce and pleasure. Inside of this 70-foot-wide strip, or area, are located four tracks of the defendants; and also an underground 18-inch pipe line used for railroad purposes to drain this area of surface water, extends under all four tracks, from a catch basin on the inside curb of Hampton Avenue to a catch basin on the inside curb of North Main Street.

Between the main line of the Charleston & Western Carolina and the interchange track an opening approximately 12 inches square is left between the ends of the two drain pipes, this hole being bricked up and is used to catch the drainage between the two tracks.

On the night of January 14, 1933, plaintiff, in company with another Negro companion, and followed by several other Negroes, was trotting across the area above described from North Main Street toward Hampton Avenue, and stepped into the drain hole, breaking his leg. By consent of the parties the jury viewed the premises. This action was the result of that injury.

The allegations of negligence and willfulness set forth in the complaint are:

(a) In causing this hole to be located on their right of way and maintaining the same without guarding, protecting, or screening the same.

(b) In causing and maintaining a condition which the defendants well knew, or ought to have known, was a seri-

ous menace and trap to the plaintiff and to the public generally.

(c) In allowing the said hole to be made and maintained when the defendants knew that the public generally, for a period of more than 20 years prior to the date of this injury, had continuously walked across the tracks and right of way within the business section of town at all points in this vicinity and the said defendants made no objection to such use of the said premises and made no effort to protect and guard the said hole.

The defendants entered a general denial and pleaded contributory negligence and contributory willfulness in the following particulars, to wit:

(a) In that the plaintiff was a trespasser upon the right of way of this defendant; and

(b) Undertook to run across railway tracks in the nighttime; and

(c) While running across railway tracks in the nighttime, failed to keep a proper lookout for his own safety; and

(d) Undertook to cross said railway tracks in a dangerous and careless manner, thereby electing to travel to his destination in an unsafe way when a safe way was available; and that he

(e) In the nighttime at a place where the public had no right to travel, without the slightest regard for his own safety and without keeping a proper lookout as to where he was going, stumbled and fell, thus bringing about his own injury.

Appellants by their argument limit the exceptions to three questions, viz.:

I. Did the Court err in admitting testimony as to a path paralleling the tracks?

II. Was plaintiff a trespasser or licensee, and if the latter, what duty did defendants owe him?

III. Was plaintiff guilty of contributory negligence as a matter of law?

The first ground of appeal charges error in the admission of testimony. Plaintiff's witness, T. C. Anderson, a surveyor, testified as to certain measurements, of the distances from the edge of the drain hole to other points; and that in his opinion it would be feasible to cover the hole with an inexpensive iron grating.

On redirect examination he was asked:

"Q. Mr. McDonald called attention to a path that goes diagonally across the tracks. Did you notice whether or not there was a path that leads between the tracks right by the hole?

"Mr. McDonald: He doesn't allege in the complaint that he was walking down the track, he alleges he was walking across the track.

"Q. Did you see a path running between the tracks, running north and south by the edge of the hole? A. Yes, sir.

"Mr. McDonald: We ask that that be stricken out on the ground that the complaint alleges that the public had been in the habit of crossing the tracks, not that they had been in the habit of walking up and down between the tracks, and the complaint alleges that the plaintiff was in the act of crossing the tracks when he was injured.

"Mr. Mayes: We allege that the whole area is used as a crossing.

"Mr. McDonald: Suppose the plaintiff had alleged that the public did walk up and down the tracks. The specific allegation is that he was walking across this series of tracks."

(After further argument of counsel.)

"Court: I think that is broad enough to allow him to put in proof as to where he was walking on this particular area which is described in paragraph three.

"Generally as a walk way and crossing." I think that would be broad enough. I will let him go ahead.

The third paragraph of the complaint is as follows:

That the said tracks and right of way of the defendants in the City of Greenwood, between the post office building

and North Main Street, south of the Seaboard Air Line Railroad overhead bridge is now, and has been for more than 20 years used by the public generally as a walkway and crossing, all of which has been with the knowledge and consent of the defendants, their agents and servants.

The plaintiff was not using this path or walkway when injured, but was going across the tracks, and not between or parallel with the tracks; the drain hole was not immediately in this path or walkway, but was near it. The hole was 3½ feet from the near rail on the Charleston and Western Railway and 6½ feet from the near rail of the Southern Railway. The proximate cause of the injury was not the use of the parallel path between the tracks, and its existence was denied or disputed by defendants' witnesses. Nevertheless the allegations of Paragraph 3 of the complaint are broad enough to admit this testimony going to show that the public used the whole area. In addition to this, the other evidence of the plaintiff tended to show:

That the whole area is walked over constantly by the public without particular reference to any path or paths, though at some points the travel is more marked than at others. Mr. Giles, the postmaster, who has been observing the area since the post office was built in 1912, testified that looking at the area from the North Main Street side you do not see a path. The whole thing is open. Looking at it from the Hampton Avenue side you notice a path coming out in front of the picture show building and another in front of the post office. Mr. Giles stated that he had no particular place to cross the area but crossed anywhere that suited him. He says there is a space of a large angle which converges to the other side; you enter anywhere and come out that path; that he does not think the people use generally any particular path. Mr. E. O. Ridlehuber, who has crossed the area himself and seen others cross off and on for 20 years said that he had never paid any special attention to a path. Mr. A. B. Sample, age 60, who has known the place and used it since he was six or

seven years of age, says that the public uses it "all the time, any time they want to," and that "they go across it and go up and down it anywhere they want to." He also says that he has never seen any sign there prohibiting people from using the place and never heard any one question his right to use it. At least three other persons have fallen into this same hole and have been injured.

The exceptions relating to the admission of the testimony as to a path paralleling the tracks cannot be sustained. This evidence was admissible in regard to the general issue as to the use by the public of the area in controversy, along with the other evidence as to this alleged fact, but is not proof of the proximate cause of the injury. In other words, it was responsive to the pleadings and admissible to show the degree of care due the public generally under the allegations of the complaint who were known to cross the tracks or to walk between the tracks, in this area of inflammation and irritation and also to show the notice or knowledge on the part of the defendants of this use by the public at large of the area or territory so fully described in detail by the record in this case.

The case of *Matthews v. S. A. L. Railway,* 67 S. C., 499, 46 S. E., 335, 338, 65 L. R. A., 286, was decided on November 27, 1903, nearly a generation ago, in a careful and exhaustive opinion by that eminent jurist, Judge C. A. Woods, of Marion, who adorned the Supreme bench of this State, and later by appointment of President Woodrow Wilson became a distinguished member of the Federal Circuit Court of Appeals for the Fourth Circuit. The *Matthews case* has always been accepted by the bench and the bar of this State as the final word upon this subject of the law. The trial and argument of the *Matthews case* was participated in by the leading attorneys of that period including one who later became an Associate Justice of this Court, and also, among others, Hon. F. Barron Grier, who was the senior member

of the law firm represented today by some of the able attorneys for the defense in the case at bar.

The *Matthews case* also arose in regard to the cut made by the Seaboard Air Line Railway Company underneath the tracks of the two defendants in the case at bar at the end of the area under discussion herein.

The Circuit Judge, his Honor, Hayne F. Rice, based his ruling upon the *Matthews case*. The appellants now raise some of the identical issues involved in the opinion of this Court by Mr. Justice Woods.

The appellants seek to draw at least two distinctions, namely (1) that the plaintiff was going across the tracks of the defendants when hurt, and not in a parallel path, and (2) that the hole was not near a diagonal path which led across the tracks, but was somewhere else in the traveled area.

Appellants, therefore, say plaintiff was a trespasser. The *Matthews case* establishes the fundamental doctrine that a railroad company, "may impose upon itself as a private corporation duties and obligations to the public or to individuals by inviting the use of the right of way, or indicating its willingness that it should be used by the public or particular individuals.

"In such circumstances the duty devolves on the railroad company to exercise ordinary care to avoid injury to those so using the right of way. This rule is not peculiar to railroads, but is of general application. The invitation need not be expressed in words, but may be implied in a number of ways; such, for instance, as the actual construction or repairing by the railroad company of a road or a bridge along the right of way, which would not be suggestive of any other use except travel on foot or in the ordinary vehicles of the country. * * *

"It is true that a railroad track is itself a danger signal to pedestrians. All persons in possession of reason must be held to know that, so far from a railroad company being able

to construct its road with regard to the safety of those who walk on it, it must have numerous dangerous cattle guards, cuts, and trestles, and that no adequate speed of trains could be maintained if those in charge of them had to have concern for persons who take the risk, unbidden, of walking on the track or right of way. Hence, ordinarily, those who walk along or across railroads, however general the practice may be, are trespassers, taking upon themselves all the risks; and the railroad company owes them no duty except not to harm them willfully or wantonly. * * *

"The general rule, in which all the Courts agree, however, is that the owner of property is held to ordinary care to avoid injury to one who enters his premises by invitation, express or implied; but the variance is as to what facts imply an invitation. * * *

"The rule as we have stated it * * * seems to require nothing more than ordinary good conduct on the part of the owner in the use of his property, to the end that injury to his neighbor may be avoided; and we think it is supported by the current of judicial opinion. * * *

"These defendants, after the cut was made, owed the duty to Partlow, entering it as one of the public, either to properly notify the public not to use the path, or to guard or warn by obstructions or lights. The wrong, if any, was in inviting Partlow into a place of danger, known to them, but not to him, without warning or safeguard; and it was of no consequence that the danger was not created by these companies, but by the rightful action of another railroad in making the cut. If, under such circumstances, he was injured without fault on his part, they should be held liable."

In the case at bar the evidence tends to show a use at random by the public of the area for the purpose of crossing the tracks of the defendants at any point in traveling by foot from one street to another, over and across this intervening space. The plaintiff was not using a path. It was, therefore, a part of the plaintiff's case to show notice,

knowledge, and acquiescence by the defendants of the character of use made by the plaintiff and the public at large of this area for a sufficient length of time to establish some consent or invitation, expressed or implied, on the part of the defendants to the use of the nature and character alleged, and thereby to constitute the plaintiff a licensee and not a trespasser. The evidence on this issue was sufficient to take the case to the jury, and the Court could not declare that the plaintiff was a naked trespasser by legal edict or as an axiom of law.

As aptly expressed by the United States Supreme Court: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt,* 293 U. S., 474, 55 S. Ct., 296, 301, 79 L. Ed., 603, 95 A. L. R., 1150; *Foust v. Munson Steamship Lines,* 299 U. S., 77, 57 S. Ct., 90, 81 L. Ed. ..........

Appellants go a step further and insist that even if the plaintiff be regarded as a licensee, nevertheless he cannot recover because the defendants owed him no duty in this case or in any case where the licensee was not injured by some active positive negligence on the part of the railroads, but only by reason of the merely passive conduct of the railroads, as the proprietors or owners of the right of way. Such active negligence, appellants say, when applied to the duties involved herein, has reference to a failure to give signals, the creation of a new hazard after the license to walk on the track has been acquired, or where the landowner actively changes the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises, which the licensor has reason to believe will be traversed by the licensee; and that sound morals demand that a reasonable warning of the danger to be encountered should be given; and that the licensor has no right to create a new danger while the license continues. Such passive negligence arises, however, in cases

where the owner of the land is held only to a mere passive acquiescence in a certain use of his land by others, who come there solely for their own convenience or pleasure and are not using it by invitation for the purposes for which the premises are by the owner appropriated, occupied, prepared, or adapted for use on the part of customers or passengers, who are led or induced to believe that they might safely enter thereon; and that one who uses the tracks under these circumstances must take the premises as he finds them, should pick his way, and accept the grace or mere sufferance of the owner, subject to the risks which pertain to the situation. This difference was fully considered in the *Matthews case, supra.* This Court held in that case, as follows:

"The distinction should not apply to that portion of the public who are not familiar with the dangers of the way, but enter it with sufficient reason to infer it has been used by the public with safety.   *   *   *

"We venture to suggest that if this distinction between those who know the danger and those who do not is borne in mind it will reconcile in some measure the apparent conflict of authority on this subject." *Matthews v. S. A. L. Ry.,* 67 S. C., 499, 46 S. E., 335, 339, 65 L. R. A., 286.

This rule is based on reason and logic and is now the law of this State under the authority of the decision of this Court, which has not been overruled or modified, by any later cases. Obviously, a licensee cannot recover for injury caused by known dangers, or risks inherent to the place, or obstructions, holes, excavations, explosions incident to the construction or use of the right of way of which reasonable notice or warnings are given in a timely way, or where due care is exercised to safeguard the premises. A hole in the ground maintained continuously in an unguarded condition, with no notice or warning sign of its presence, located in the center of a city, upon a railroad right of way at a point where the public at large are known to go and come in crossing the railroad tracks, cannot, as a matter of law, be

held to constitute such a passive act of innocuous negligence as not to create any liability whatever on the part of the defendants to the public, or to the plaintiff herein.

The third and last question presents an issue for the jury as the proper tribunal and sole judges of the facts, to decide. Whether the plaintiff was guilty of contributory negligence is a mixed question of law and fact, and cannot be decided by the Court as an issue of law solely, unless the evidence all points one way and there is no evidence to the contrary sufficient to sustain a verdict. We cannot say that the verdict is not supported by the evidence, nor that the only reasonable inference to be drawn from the testimony shows that the plaintiff negligently contributed to and caused his injury. The plaintiff's conduct in trotting across this area in the nighttime subjected him to the risks of tripping and falling on the rails and cross-ties, of which he was expected to know and of which he was taking his chances, but he had no reason to know of, or expect to encounter this hole. Even if he had been walking along casually or even picking his way, he might have fallen in the hole, as three prominent citizens of the town had done. It was for the jury to pass upon this issue.

Therefore, the exceptions are all overruled, and the judgment below is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE BAKER concurs in result.

MR. JUSTICE CARTER did not participate.