15236

HAYES *v.* ATLANTIC COAST LINE R. CO. *ET AL.*

(18 S. E. (2d), 921)

*Messrs. Stevenson & Lindsay* and *Woods & Woods* for appellants,

*Messrs. T. I. Rogers* and *J. K. Owens,* for respondents,

March 26, 1941.

The opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE STUKES.

This action was brought. under Lord Campbell's Act, Code 1932 §§ 411, 412, for damages, actual and punitive, accruing to the plaintiff, the father and sole beneficiary, on account of the death of his intestate son whose mangled body was found upon and along the track of the defendant railroad company near and northeast of its Marlboro station in this State.

It was alleged in the complaint that on the Sunday afternoon of May 15, 1938, the deceased, who was twenty-two years old and lived and worked with his father on the latter's farm in the neighborhood, left the station at Marlboro walking along a beaten pathway adjacent to the railway track, which path the public had for many years traveled on foot, and for some reason unknown to the plaintiff, lay down upon the track, partly on the rail, and when so lying in an apparently helpless condition about a quarter mile from the station, without view impairment or obstruction to the engineer of the approaching train, was run over by the latter without warning by whistle or bell, whereby the deceased met his death from the reckless, gross and wanton

negligence of the defendants in the following particulars, to wit: (1) Failure to give the signals at an intervening road crossing and particularly for the deceased after seeing him in an apparently helpless condition on the track; (2) failing to stop the train as quickly as possible after observing the latter in the said condition, and (3) failure to keep a proper lookout by which the accident would have been prevented.

The answer of the railroad company denied that the death of the decedent was caused by any negligence or willful negligence of it or its engineer, who was also a defendant in the action, but that such resulted from the decedent's own negligence, recklessness, willfulness and wantonness or in manner and by means unknown; that the deceased while grossly intoxicated and at about the scheduled time of the regular train lay down upon the track a short distance beyond the curve where he could not be seen by the engineer in time to stop the train before striking him, and went to sleep or was unconscious from drink, and as soon as he was visible to the engineer all reasonably available means were adopted to stop the train, but such could not be done in time to avoid running over the deceased while he was thus lying on the track. The answer further contains the plea of contributory negligence, recklessness, willfulness and wantonness on the part of the deceased. The answer of the personal defendant, Powers, the locomotive engineer, was of like content.

In the course of the trial, the Court refused defendant's motions for nonsuit and directed verdict and in the ruling upon the latter it was said that the case would be submitted to the jury on actual and punitive damages on two of the specifications of alleged negligence only: The failure to stop the train as soon as possible after the engineer saw the decedent on the track and in not keeping a proper lookout; and such submission would be upon the theory that the decedent was a trespasser. The jury were so instructed, and they returned a general verdict for the defendants.

Thereupon, the plaintiff moved for a new trial upon several grounds, but under the order thereupon we are here concerned only with the ground therein mentioned and upon which a new trial was granted. It can best be set forth by the following quotation of the pertinent part of the order: "After full argument by attorneys for plaintiff and the defendant, I am convinced that I committed error in not submitting to the jury the question as to whether or not the decedent was a licensee, and in submitting the case to the jury on the sole proposition that he was a trespasser. I find that there was evidence upon which the jury under proper instructions could have reached the conclusion that the decedent was a licensee."

The defendants have appealed upon numerous exceptions which they state in their brief raise four questions. Numbers I and II of these questions charge error on the part of the trial Judge in the refusal of their motion for nonsuit and direction of the verdict. However, under the decisions of this Court an appeal from the refusal of such motions cannot be had until after final judgment, so the exceptions raising these questions are overruled. *Agnew v. Adams,* 24 S. C., 86; *Bryson v. Railway Co.,* 35 S. C., 608, 14 S. E., 630; *Barker v. Thomas,* 85 S. C., 82, 67 S. E., 1; *Floyd v. Page,* 124 S. C., 400, 117 S. E., 409; *Parham-Thomas-McSwain v. Atlantic Life Ins. Co.,* 106 S. C., 211, 90 S. E., 1022; *Woods v. Rock Hill Fertilizer Co.,* 102 S. C., 442, 86 S. E., 817, Ann Cas., 1917-D, 1140.

Appellants' Questions III and IV impute error to the Court in setting aside the verdict in favor of them and granting respondent's motion for a new trial because of the instruction of the jury that the decedent was a trespasser, and contend that if such instruction was error it was not prejudicial to respondent. The latter contention is patently untenable; if error, it must be held to have been prejudicial in view of the difference in the law applicable to a licensee and a trespasser, as the jury were instructed in this case.

We have carefully considered the evidence, which is set out in full in the record, and find ourselves in agreement with the conclusion of the trial Court that there was evidence from which the jury may have reasonably concluded that the deceased was a licensee and not a trespasser.

The rule in this State, as we understand it, gathered from an examination of many cases, is that even though the use of a pathway running alongside the railroad track was not for such length of time nor of such character as to give a legal right to so use it, and even though the evidence fell short of showing any positive consent by the company to such use, yet if there was evidence tending to show knowledge of and acquiescence in such use without protest, such evidence would tend to show that the railroad company had reason to expect the presence of persons along or on the track who were not there as bald trespassers, but whose presence at the particular place might reasonably be anticipated. *Sentell v. Southern Ry.*, 70 S. C., 183, 49 S. E., 215; *Sanders v. Southern Ry., Carolina Division*, 90 S. C., 331, 73 S. E., 356; *Carter v. Seaboard Air Line R. Co.*, 114 S. C., 517, 104 S. E., 186. See, also, *Pryor v. Atlantic-Charlotte Airline R. Co.*, 179 S. C., 423, 184 S. E., 137; *Key v. Charleston & W. C. R. Co.*, 144 S. C., 164, 142 S. E., 336; *Sharpe v. Southern R. Co.*, 125 S. C., 478, 119 S. E., 245, and Annotation, 120 A. L. R., 1076.

A review of the foregoing cases, and many others, shows that our Court, along with a majority of the Courts of other jurisdictions, has adopted what might be termed a liberal view, to the effect that a railroad does or may owe a duty to anticipate the presence of persons along or crossing its tracks at a well-defined pathway at a place in which it has acquiesced in a somewhat general use thereof (not amounting to a legally established public use), or where the circumstances have been such that the presence of per-

sons on or along the tracks at that particular place may reasonably be expected.

In accordance with this rule, the relation to the railroad company of one injured at such place, is not necessarily that of a naked trespasser, but his status may be that of a licensee, and as such it would be the duty of the railroad company to exercise ordinary care so as to prevent injury to him.

The testimony in the case at bar permitted the inference that for more than twenty years the railroad company had acquiesced in the use of the footpath in question by pedestrians. There is also testimony tending to show that this path was near the Marlboro station, and extended between two railroad crossings. While it is true that it appeared that the deceased was lying outstretched on the track, with his feet toward the crosstie ends and his arms and head actually on the rail, this would not permit the Court under the testimony to declare as a matter of law that the decedent was a trespasser. His prone position indicated a helpless physical condition, near the footpath upon which he had been seen walking within a half hour prior to the time the engine ran over him, and at a place where the public was accustomed to use such path. Whether under these circumstances the defendants were charged with the duty of anticipating the presence of persons on or near this particular stretch of track was a question for the determination of the jury. If such duty was incumbent upon them then they should have exercised ordinary care.

Judgment affirmed.

MR. ASSOCIATE JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. ASSOCIATE JUSTICE BAKER concurs in part and dissents.

MR. CHIEF JUSTICE BONHAM dissents.

MR. ASSOCIATE JUSTICE BAKER (dissenting) :

Until the Court is ready to overrule *Floyd v. Page*, 124 S. C., 400, 117 S. E., 409, and the authorities relied upon in

the decision of that case, an order refusing a nonsuit or the direction of a verdict is not appealable until after final judgment; but an order granting a new trial on a question of law, and not as a matter of discretion based upon the weight of the testimony, is clearly appealable (*Walker et al. v. Quinn et al.,* 134 S. C., 510, 133 S. E., 144), and it is equally clear that a question of evidence or no evidence is a question of law. *In re Nightingale's Estate,* 182 S. C., 527, 189 S. E., 890. It is, therefore, apparent that while the refusal of appellants' motions for nonsuit and directed verdict is not at present appealable, yet the order granting a new trial on the ground of error in instructing the jury that respondent's intestate was a trespasser, when there was some evidence upon which the jury could have reached the conclusion that he was a licensee, a question of evidence or no evidence, was based on a question of law so that it is appealable.

Respondent's claim that his intestate was a licensee on the railroad property at the time of his death is based upon allegations of the complaint to the effect that he was "walking along a beaten pathway, which the public for many years had been accustomed to traveling on foot," and that "for some unaccountable reason, unknown to the plaintiff, the decedent lay down upon the track of said railroad, partly on the rail or tee iron  *  *  * ." In response to these allegations the testimony shows that on the day of his death plaintiff's intestate, in the company of one Blue, was around Marlboro station, a small unincorporated flag station on the defendant railroad's line of road between Bennettsville and Darlington. He was seen by respondent's witness, G. W. Jackson, Jr., about thirty or thirty-five minutes before he was struck by the train, going in the direction of the railroad track and trying to catch up with Blue, who had preceded him. Prior to the time he was seen by the railroad engineer prostrate on the railroad track, just before the engine ran over him, he was last seen by respondent's witness, Son Dixon, who thus describes his movements:

"Q. Tell the jury what you saw and what you heard? A. Well, I seen Mr. Hayes about thirty minutes, at the longest, before he got killed. He come by the depot there teasing a colored man and pulling his leg and ran on up the track towards Bennettsville to catch this Blue fellow. He stepped across the woods toward the brickyard, the Hayes fellow went that way, too; when we saw them again they came out of the woods with locked arms. I paid no more attention to them until the train stopped. We thought something was wrong and ran on up there.

"Q. The last you saw of Blue and Hayes they were walking up the track arm in arm? A. Yes, sir.

"Q. That was about the switch? A. Yes, sir; pretty close to the switch."

Hayes was not again seen by any witness until he was seen by the engineer prostrate on the railroad track when, according to the engineer, it was impossible to stop the train in time to avoid running over him. It is all a matter of speculation or conjecture as to what caused him to lie down on the track, what was the reason or occasion for his being thus prostrate on the track, and as to whether he was actually alive when struck by the train. Indeed, respondent himself cannot suggest any reason for his intestate's situation, and in his complaint is only able to allege that "for some unaccountable reason, unknown to the plaintiff, the decedent lay down on the track of the railroad, partly on the rail or tee iron  *  *  * ."

Respondent and his witness, Woods, testified to the effect that there was a path on each side of the railroad track at the place in question, which people customarily used for walking, but neither of them testified at all definitely as to the extent or frequency of the use, nor did either of them fix even the approximate time of such use. It is true that respondent said he had lived in that community for twenty-five or thirty years, and that he had been knowing the habits of the people along there "something like 25 or 30 years," but an examination of the record will show that he did not

say there had been a custom to use the path for twenty-five or thirty years, or for any definitely stated or even approximated period of time. Both of these witnesses, who were the only witnesses as to any path, also testified very definitely that the nature of the path and the nature of the travel on it were in no respect different from the ordinary path and travel by the side of the railroad tracks at all points on this as well as other railroads. The witness, Woods, was asked this specific question by counsel for respondent: "Is it a well beaten path or a path all of the way?" His reply to the question was "I wouldn't say that," and in further elaboration he said it was "just a footpath, enough to see that people walked along there."

If it is to be found that respondent's intestate was not a trespasser as a matter of law, and that there was some testimony from which the jury might properly have found him to be a licensee, such finding must be based on the foregoing state of facts as disclosed by the record. To so find under this state of facts is to materially extend the somewhat advanced and liberal view heretofore taken by the Court in regard to the status of persons going on railroad property without legal right, and it will not only not find support in the previous decisions of this Court but it will be in actual conflict with them.

In *Haltiwanger v. Columbia, N. & L. R. Co.,* 64 S. C., 7, 41 S. E., 810, in an opinion by Mr. Chief Justice McIver, after a thorough consideration of the question it was held that a person walking in a footpath along a railroad track, where the public is accustomed to walk without objection from the railroad company but without legal right, is a trespasser as a matter of law. This case, however, was not wholly consistent with the previous case of *Jones v. Charleston & W. C. Ry. Co.,* 61 S. C., 556, 39 S. E., 758, and with the later case of *Matthews v. Seaboard A. L. Ry.,* 67 S. C., 499, 46 S. E., 335, 65 L. R. A., 286, as well as other cases following the *Matthews case,* and in referring to this inconsistency in *Sanders v. Southern Ry.,* 90 S. C., 331,

73 S. E., 356, 358, the Court said: "* * * but the *Halti-wanger case* cannot be reconciled with the cases above cited, and therefore it and the *Hale case* [*Hale v. Columbia & G. Railroad Co.,* 34 S. C., 292, 13 S. E., 537], in so far as they are at variance with these cases, are no longer to be considered as authority." Since that time the principles decided in the *Matthews case* have not been questioned, and they have been considered and universally accepted as the settled law of the State. As recently as the case of *Smiley v. Southern R. Co.,* 184 S. C., 130, 191 S. E., 895, 898, decided on June 14, 1937, in discussing this question, the Court said: "The *Matthews case* has always been accepted by the bench and the bar of this state as the final word upon this subject of the law.."

In the *Matthews case* (67 S. C., 499, 46 S. E., 388, 65 L. R. A., 286), the Court said: "* * * Hence, ordinarily those who walk along or across railroads, however general the practice may be, are trespassers, taking upon themselves all the risks; and the railroad company owes them no duty except not to harm them willfully or wantonly. * * *" The Court then qualified this general rule by stating that when such use of its property is with the acquiescence and consent of the railroad company such persons are licensees and not trespassers. It was further held in this connection that "'acquiescence and consent' convey the meaning, not only of knowledge and recognition on the part of the defendants of the alleged use of the right-of-way, but actual concurrence in such use," and that aside from express acquiescence and consent such acquiescence and consent may be implied from the use of the right-of-way by the public for a long period of time at a particular place "so continuously and frequently that it becomes a well-beaten or clearly defined path." "In such a case," the Court says, "the owner of the property knows and acquiesces in the use, and by this acquiescence those wishing to go in that direction are lured into a sense of safety in following the course obviously taken by those who have preceded them."

If we are to continue to accept the *Matthews case* "as the final word upon this subject of the law" as was so recently said in *Smiley v. Southern R. Co., supra,* then it would seem obvious that the testimony in relation to the path in this case is not enough to establish that acquiescence, consent and concurrence necessary to make a person using it a licensee.

As previously pointed out, with the burden resting on the plaintiff-respondent the testimony fails to show the extent or frequency of the use, or even the approximate time of such use, so as to afford some basis to conclude that the path had been used for a long period of time, and neither of the only two witnesses who testified as to the path testified to the effect that it had become "a well beaten or clearly defined path, plain and open," one of them in response to the direct question as to whether it was a well-beaten path replying: "I wouldn't say that." In addition to this, and what is even more convincing, both of these witnesses definitely and clearly stated that the nature of the path and the travel on it were no different from other places by the side of the railroad tracks, thus indicating the total insufficiency of the testimony to give to this alleged path that distinctive character necessary to imply acquiescence in and consent to its use by the public. If those traveling here were licensees, then a person traveling anywhere by the side of railroad tracks is equally a licensee, and not a trespasser.

In addition to other considerations, it does not seem that the Court would be justified in ignoring the indisputable conditions disclosed by appellants' Exhibit 1, which is a picture taken from the point where respondent's intestate is said to have been struck by the train and looking in the direction from which the train was coming. The accuracy of this picture is not questioned, and there has been no attempt to impeach it. It shows a railroad track running through a desolate, uncultivated country, without a house in sight, with no distinctive well-beaten path at the side of the railroad tracks, and nothing to distinguish the situation in

the slightest degree of substance from any other railroad track running through any remote place in the open country. It would be desirable and enlightening to reproduce this picture along with the opinions filed in this case, but the expense of so doing is probably not warranted.

Waiving all of the foregoing considerations, however, and assuming that this path was of such a nature and had been so used as to make a person using it a licensee, that could not possibly have the effect of making a person a licensee who was not using it, and who, so far as the testimony disclosed, had never at any time been on it, but had confined his presence on the railroad property to the actual railroad tracks, a very different and much more dangerous place. The testimony of respondent's witness, Son Dixon, previously referred to, shows without dispute that when respondent's intestate reached the railroad he did not walk along any path by the side of the track, but that he and Blue, arm in arm, walked up the track itself, and when next seen by the engineer, the next person to see him after he was seen by Son Dixon, he was still not in the path but prone on the track. If respondent's intestate had a license to use the path for travel, clearly such license could not justly be construed, and its terms so radically extended, as to include the use of a place of such obvious danger as the space between the rails of the railroad track.

As another alternative, if it should be, assumed, though without evidentiary support, that respondent's intestate had been using the path up to the moment he left the path and lay down upon the railroad track, he still could not be held to be a licensee under such circumstances, even if a person using the path was a licensee. If the nature of the path, the frequency, character, and length of time of its use, were such as to create a license to respondent's intestate to use the path for travel, it certainly could not be evidence of a license to travel on the railroad track, and much less to abandon the path and lie down upon the railroad track. If he had a license, it was a license to travel in the path, and

not a license to abandon the path, cease to be a traveler at all, and to make a bed of the railroad track itself. Very clearly what respondent's intestate did, even if he had been using the path, was in excess of his license, which was to travel the path. If he exceeded his license, then plainly. he no longer acted under and by authority of his license, and he was no longer a licensee but a trespasser.

It appears to be settled by all authorities on the subject that a licensee going beyond the terms of his license to that extent loses his character as a licensee and becomes a trespasser. The principle will be illustrated by the following general statement from 37 C. J., 285, 286: "Until revoked a license constitutes protection to the licensee as against the licensor, even though the act licensed is illegal. It justifies or excuses him, and exempts him from liability to the licensor for all acts done within the scope of the license prior to its revocation, including all acts which are necessarily incidental to the full enjoyment of the license. But the terms of the license must be strictly followed; it does not protect or justify the licensee in doing acts which are not within its terms or necessarily incidental thereto; and he is liable for the resulting damages if he exceeds the license or abuses his authority. Thus a license to go upon land for one purpose does not justify an entry for another purpose, nor an entry upon other land."

The question was involved in *Burnett v. Postal Telegraph Cable Co.*, 79 S. C., 462, 60 S. E., 116, 117, in which it was said: "In the absence of a valid writing to the contrary, it is inferable from the testimony that the only permission given was the right to construct along the dirt road, and that defendant, in violation of the permit, constructed elsewhere. If so, such entry was not by permission, but constituted a trespass. * * *"

The question was also involved in *Groce v. Greenville, Spartanburg & Anderson R. Co.*, 94 S. C., 199, 78 S. E., 888, 890, in which it was said: "But, even if the entry for the purpose of construction was made under the grant or

right-of-way granted or for any invasion of the property by consent, actual or presumed, the defendant would nevertheless be liable for any trespass committed outside the rights of the plaintiff not incident to the proper location and construction of its road, just as it would be in case of an entry without such consent. * * * "

The case of *Smiley v. Southern R. Co.*, 184 S. C., 130, 191 S. E., 895, 899, also to some extent applies this rule. In that case the party alleged to have been injured was not using a path at the time of his injury, but was using the railroad tracks for the purpose of crossing, and in connection with the situation involved, the Court said: "In the case at bar the evidence tends to show a use at random by the public of the area for the purpose of crossing the tracks of the defendants at any point in traveling by foot from one street to another, over and across this intervening space. The plaintiff was not using a path. It was, therefore, a part of the plaintiff's case to show notice, knowledge, and acquiescence by the defendants of the character of use made by the plaintiff and the public at large of this area for a sufficient length of time to establish some consent or invitation, expressed or implied, on the part of the defendants to the use of the nature and character alleged, and thereby to constitute the plaintiff a licensee and not a trespasser. * * * "

For the foregoing reasons it is my opinion that the order granting a new trial should be reversed.

Mr. Chief Justice Bonham concurs.